**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, *et al.*, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 2:20-cv-01687 |
| v. | ) ) | |
| ANDREW R. WHEELER, *et al.*, | ) ) | |
| *Defendants*. | ) ) ) | |

**PROPOSED BUSINESS INTERVENORS' UNOPPOSED MOTION TO INTERVENE**
**AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, Proposed Intervenors-Defendants the American Farm Bureau Federation, American Petroleum Institute, American Road and Transportation Builders Association, Chamber of Commerce of the United States of America, Edison Electric Institute, Leading Builders of America, National Alliance of Forest Owners, National Association of Home Builders, National Cattlemen's Beef Association, National Corn Growers Association, National Mining Association, National Pork Producers Council, National Stone, Sand, and Gravel Association, North Carolina Farm Bureau, Public Lands Council, South Carolina Farm Bureau, and U.S. Poultry & Egg Association (collectively, the "proposed Business Intervenors") respectfully move to intervene as of right in this action as Defendants. In the alternative, the proposed Business Intervenors move pursuant to Rule 24(b) for leave to intervene permissively. Pursuant to Local Civil Rule 7.02, the undersigned counsel for the proposed Business Intervenors has conferred with the parties regarding their intent to file the present motion to

intervene. Counsel for the Plaintiffs and for the Federal Defendants have advised counsel for the proposed Business Intervenors that they do not oppose this intervention motion but take no position on whether intervention is appropriate as of right or, alternatively, permissively .

## SUMMARY OF THE NATURE OF THE CASE

The present action is the third challenge to come before this Court regarding the proper definition of Waters of the United States ("WOTUS") within the meaning of the Clean Water Act ("CWA"). Plaintiffs' complaint challenges the latest definition of WOTUS promulgated as a final agency action by the Environmental Protection Agency and the U.S. Army Corps of Engineers (together, the "agencies"). *See* The Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) ("2020 Rule"). The proposed Business Intervenor trade groups represent countless businesses and families that own and/or use land for a broad variety of purposes including farming, ranching and other livestock production, forestry, manufacturing, mining of all types, oil and gas production and refining, power generation, road and other infrastructure construction, and home and commercial building, and which between them represent a very large portion of the Nation's economic activity.[1] Conducting these businesses often

---

[1]    *See* American Farm Bureau Federation, https://www.fb.org/ (last visited May 18, 2020); American Petroleum Institute, https://www.api.org/ (last visited May 18, 2020); American Road & Transportation Builders Association, https://www.artba.org/ (last visited May 18, 2020); Chamber of Commerce of the United States of America, https://www.uschamber.com/ (last visited May 18, 2020); Edison Electric Institute, https://www.eei.org/pages/default.aspx (last visited May 18, 2020); Leading Builders of America, https://leadingbuilders.org/ (last visited May 18, 2020); National Alliance of Forest Owners, https://nafoalliance.org/ (last visited May 18, 2020); National Association of Home Builders, https://www.nahb.org/ (last visited May 18, 2020); National Cattlemen's Beef Association, https://www.ncba.org/ (last visited May 18, 2020); National Corn Growers Association, https://www.ncga.com/ (last visited May 18, 2020); National Mining Association, https://nma.org/ (last visited May 18, 2020); National Pork Producers Council, https://nppc.org/about-us/ (last visited May 18, 2020); National Stone, Sand, & Gravel Association, https://www.nssga.org/ (last visited May 18, 2020); North Carolina Farm Bureau, https://ncfb.org (last visited May 18, 2020); Public Lands Council, https://publiclandscouncil.org/; South Carolina Farm Bureau, https://scfb.org (last visited May 18, 2020); U.S. Poultry & Egg Association, https://www.uspoultry.org/ (last visited May 18, 2020).

requires determining if property includes waters of the United States subject to CWA jurisdiction and hence to CWA permitting requirements and the threat of criminal and civil liability if activity occurs in WOTUS without a permit. For that reason, the proposed Business Intervenors and their members are intensely interested in the regulatory definition of WOTUS at issue in this litigation.

The proposed Business Intervenors seek to intervene as Defendants to defend the 2020 Rule. The 2020 Rule culminates more than five years of multiple administrative rulemakings and varied litigation, in which the proposed Business Intervenors have participated at every step, by submitting comments on every proposed rule, initiating litigation, and intervening in other litigation (including litigation before this Court).

That litigation began when the prior Administration issued a regulatory definition of WOTUS in 2015. *See* Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 Rule"). The proposed Business Intervenors, among other things:[2]

- Challenged the jurisdiction of the U.S. Court of Appeals for the Sixth Circuit to hear consolidated petitions for review of the 2015 Rule, obtained certiorari from the Sixth Circuit's decision that it had jurisdiction, and then prevailed on the merits in the Supreme Court on their argument that those challenges (and now challenges to the 2020 Rule) belong in the first instance in district courts. *See Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617 (2018).

- Filed suit in the U.S. District Court for the Southern District of Texas, arguing that the 2015 Rule was unlawful and inconsistent with the text of the CWA because it covers a staggering amount of land that Congress never intended to reach and also

---

[2]    Not all of the proposed Business Intervenors have been parties in each one of the cases described below, but (with the sole exception of North Carolina Farm Bureau, which operates in the same State as a number of the Plaintiff organizations, see Compl. ¶¶ 44-47, 50), each proposed Intervenor has been involved in some of those cases, and most of the proposed Intervenors have been involved in all of them as either a party or an *amicus*.

was procedurally defective under the Administrative Procedure Act. The District Court agreed that the 2015 Rule was procedurally defective and remanded the Rule to the agencies. *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019).

- Filed suit in the District of Oklahoma to challenge the 2015 Rule. Compl., *Chamber of Commerce v. EPA*, No. 15-cv-386 (N.D. Okla. July 10, 2015) (Dkt. 1), *on appeal sub nom. Hunter v. EPA*, No. 19-5055 (10th Cir. 2019).

- Intervened as plaintiffs in the Southern District of Georgia to challenge the lawfulness of the 2015 Rule, and obtained a ruling that the Rule was both substantively and procedurally defective and a remand of the Rule to the agencies. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019).

- Intervened as defendants and obtained dismissal on standing grounds of claims in the Western District of Washington challenging the 2015 Rule's provisions as to waste water treatment facilities. Order, *Puget Soundkeeper All. v. McCarthy*, No. 2:15-cv-1342 (W.D. Wash. Nov. 25, 2019) (Dkt. 103).

- Intervened as defendants in suits by environmental organizations and States before this Court and in the Southern District of New York that challenged regulatory efforts to delay the enforcement of the 2015 Rule. *See* Definition of "Waters of the United States"—Addition of an Applicability Date to 2015 Clean Water Rule, 83 Fed. Reg. 5200 (Feb. 6, 2018) ("Delay Rule"); *S.C. Coastal Conservation League v. Pruitt*, No. 2-18-cv-330, 2018 WL 2184395 (D.S.C. May 11, 2018) ("*SCCCL I*"); Opinion and Order at 2, *New York v. Pruitt*, No. 1:18-cv-1030-JPO (S.D.N.Y. Apr. 5, 2018) (Dkt. 57); Opinion and Order at 2, *Nat. Res. Def. Council v. EPA*, No. 1:18-cv-1048 (S.D.N.Y. Feb. 6, 2018) (Dkt. 48).

- Intervened as defendants before this Court to defend the 2019 Rule repealing the 2015 Rule. *See* Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("Repeal Rule"); Order, *S.C. Coastal Conservation League v. Wheeler*, No. 2:19-cv-3006 (D.S.C. Feb. 19, 2020)

(Dkt. 33) ("*SCCCL II*").

In other words, the proposed Business Intervenors have been at the very heart of litigation over the 2015 Rule and subsequent delay and repeal efforts—as well as submitting comments on every iteration of every proposed rule. *See* p.15, n.6, *infra* (citing comments).

These prior cases are closely interconnected with the current challenge to the 2020 Rule. Each considers the legality of administrative actions regarding the same provisions of the CWA defining the scope of federal jurisdiction and the same long history of rulemaking and judicial decisions. And each addresses the lawful scope of the agencies' authority under the CWA to regulate land and waters, and affects the ability of industry and private parties, like the proposed Business Intervenors' members, to use their land without obtaining a CWA permit. As this Court previously recognized in granting most of the same proposed Business Intervenors' motion to intervene, the Business Intervenors and their members "have a substantial stake in the outcome" of litigation determining the regulatory definition of WOTUS, in part because "the industries that these business groups represent operate in a regulatory sphere that include regulations governing water usage in the United States." *SCCCL I*, 2018 WL 2184395, at *8-9; *see also* Opinion and Order at 2, *New York*, No. 1:18-cv-1030-JPO ("the industry groups have demonstrated a serious economic interest in the [WOTUS] rule, as it regulates discharge into waterways").

The same is true here. The lawsuit before this Court will determine under which regulatory regime the proposed Business Intervenors' members must operate. And Plaintiffs' ultimate objective—and the logical result of enjoining the 2020 Rule (which Plaintiffs claim is "substantially narrower" in scope than prior regimes (Compl. ¶ 3; *see also id.* ¶ 128))—is to return to a broader definition of WOTUS and greater federal regulation. Accordingly, as Plaintiffs' allegations show, a ruling in favor of Plaintiffs would subject private parties like the proposed Business Intervenors' members to more burdensome regulatory requirements and inhibit their productive use and

enjoyment of their lands. Further, were Plaintiffs to succeed on their claim that the 2020 Rule is unlawful because the agencies "abdicate[d] the authority Congress vested in them" (*id.* ¶ 224), or that the 2020 Rule unlawfully "exclud[es] … traditional[ly] navigable waters" (*id.* ¶ 229), any such holding would have direct bearing on the tangled web of litigation regarding the lawful scope of the agencies' jurisdiction, a question present in each WOTUS-related suit, including the Repeal Rule suit currently in abeyance before this Court, in which the proposed Business Intervenors are intervenor-defendants. *See* Order, *SCCCL II*, No. 2:19-cv-3006-DCN (D.S.C. Feb. 19, 2020) (Dkt. 33).

The Court should therefore grant the proposed Business Intervenors leave to intervene to protect their interests in this and other related litigation. The motion is timely; the proposed Business Intervenors, as owners or users of land for a huge variety of business purposes, have regulatory and economic interests in the agencies' action that will be impaired if they cannot defend it; and the agencies, as neutral regulatory bodies, cannot represent the interests of the regulated business community with the same perspective and vigor. The Business Intervenors believe that their experience operating under the CWA and various regulatory regimes implementing it, and their close involvement in every stage of recent rulemaking and litigation, will be helpful to the Court in resolving this case. The motion to intervene as of right or permissively accordingly should be granted.[3]

## STATEMENT OF FACTS

On June 29, 2015, the agencies published the 2015 Rule, which purported to "clarify" the definition of WOTUS within the meaning of the CWA. 2015 Rule, 80 Fed. Reg. at 37,054. Because

---

[3]    As "interven[ors] in support of *defendants* in the trial court" the proposed Business Intervenors "[d]o not need to establish standing." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019); *see also Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648 (2017).

the agencies' regulatory jurisdiction extends to "waters of the United States" and no more, the definition of WOTUS establishes the scope of the agencies' regulatory jurisdiction under the CWA.

Because the sweeping reach of the 2015 Rule stood to significantly impair their business operations, many of the proposed Business Intervenors (along with various coalitions of States) challenged the legality of the 2015 Rule, filing a lawsuit before the Southern District of Texas. *See* Compl., *Am. Farm Bureau Fed'n v. EPA*, No. 3:15-cv-165 (S.D. Tex. July 2, 2015) (Dkt. 1). Some challenged the Rule in the District Court for the Northern District of Oklahoma. *Chamber of Commerce v. EPA*, No. 15-cv-386 (N.D. Okla. 2015), *on appeal sub nom. Hunter v. EPA*, No. 19-5055 (10th Cir. 2019). The proposed Business Intervenors also challenged the 2015 Rule before the U.S. Court of Appeals for the Sixth Circuit and obtained certiorari and a decision from the U.S. Supreme Court holding that challenges to WOTUS rules belong in the district courts rather than the courts of appeals. Brief for the Business & Municipal Pet'rs, *In re EPA & Dep't of Defense Clean Water Rule*, No. 15-3751 (6th Cir. Nov. 1, 2016) (Dkt. 129); *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617 (2018). In addition to those suits, the proposed Business Intervenors have litigated the lawfulness of the 2015 Rule or aspects of that rule as intervenors before this Court, in the Southern District of Georgia, and the Western District of Washington, and as *amici curiae* in the District of North Dakota and the Tenth Circuit. As a result of these challenges, various courts issued regional preliminary injunctions guarding against application of the 2015 WOTUS Rule in more than half of the States. *See* Order, *Am. Farm Bureau Fed'n*, No. 3:15-cv-165 (Sept. 12, 2018) (Dkt. 87); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1364-65 (S.D. Ga. 2018); *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1060 (D.N.D. 2015).

While the litigation was ongoing, the agencies published a notice of proposed rulemaking, proposing to repeal and replace the 2015 Rule in a "comprehensive, two-step process." *See* Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 82 Fed. Reg.

34,899, 34,899 (July 27, 2017). The first step of this comprehensive process (the "Proposed Repeal Rule") would "rescind" the 2015 Rule, restoring the status quo ante by regulation. *Id*. "In a second step," according to the agencies, the government would "conduct a substantive reevaluation of the definition of 'waters of the United States.'" *Id.*

The Proposed Repeal Rule was published on July 27, 2017, and the comment period ended two months later, on September 27, 2017. In light of delay in issuing a final Repeal Rule, the agencies set out "to maintain the status quo" by amending the 2015 Rule with a delayed "applicability date" to provide "continuity and regulatory certainty for regulated entities, the States and Tribes, agency staff, and the public while the agencies continue to work to consider possible revisions." Definition of "Waters of the United States"- Addition of an Applicability Date to 2015 Clean Water Rule, 82 Fed. Reg. 55,542, 55,542 (Nov. 22, 2017).

The final Applicability Date Rule was published in the Federal Register on February 6, 2018. *See* Definition of "Waters of the United States"—Addition of an Applicability Date to 2015 Clean Water Rule, 83 Fed. Reg. 5200 (Feb. 6, 2018). States and environmental organizations filed lawsuits challenging the legality of the Applicability Date Rule in the U.S. District Court for the Southern District of New York. Most of the proposed Business Intervenors intervened permissively to defend the Rule, and fully participated in that litigation. In addition, environmental organizations filed a lawsuit before this Court challenging the Applicability Date Rule. Because the Business Intervenors "certainly" had an interest in the subject matter of the litigation, this Court also granted the proposed Business Intervenors permissive intervention to protect their interests.  *SCCCL I*, 2018 WL 2184395, at *9. Following briefing on summary judgment, this Court issued an order enjoining the Applicability Date Rule. *SCCCL v. Pruitt*, 318 F. Supp. 3d 959 (D.S.C. 2018). The ruling allowed the 2015 Rule to spring back into place on a patchwork basis in the States where no court had issued a preliminary injunction to protect against its operation.

Meanwhile, the Business Intervenors' litigation challenging the 2015 Rule continued. The Southern District of Texas and Southern District of Georgia both held that the 2015 Rule violated the procedural requirements of the APA. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019); *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019). The Southern District of Georgia held that the 2015 Rule is both procedurally defective and inconsistent with the CWA. *Georgia*, 418 F. Supp. 3d at 1381-82. Both of those courts remanded the Rule to the agencies in light of the ongoing administrative process to repeal and replace the 2015 Rule, keeping their previously issued preliminary injunctions in place. *Id*.; 389 F. Supp. 3d at 506.

The agencies published the final Repeal Rule in the Federal Register on October 22, 2019. Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019). Various suits quickly challenged its legality, including a suit that almost all of the same Plaintiffs brought before this Court, and in which almost all of the same proposed Business Intervenors were granted permissive intervention. *See* Compl., *SCCCL II*, No. 2:19-cv-3006 (D.S.C. Oct. 23, 2019) (Dkt. 1). [4] The agencies then published the final 2020 Rule, the subject of this action, on April 21, 2020. The 2020 Rule takes effect on June 22, 2020.

A number of States, the District of Columbia, and New York City have challenged the 2020 Rule in the Northern District of California, Compl., *California v. Wheeler*, No. 3:20-cv-03005 (N.D. Cal. May 1, 2020) (Dkt. 1), and have moved for a preliminary injunction. *Id.*, Dkt. 30 (May 18,

---

[4]    Additional challenges to the Repeal Rule include the following: Complaint, *Chesapeake Bay Foundation v. Wheeler*, 1:20-cv-1064 (D. Md. Apr. 27, 2020) (Dkt. 1); Complaint, *New York v. Wheeler*, No. 1:19-cv-11673 (S.D.N.Y. Dec. 20, 2019) (Dkt. 1); Supplemental Amended Complaint, *Washington Cattlemen's Association v. EPA*, No. 2:19-cv-00569 (W.D. Wash. Dec. 20, 2019) (Dkt. 60); Complaint, *Murray v. Wheeler*, No. 1:19-cv-01498 (N.D.N.Y. Dec. 4, 2019) (Dkt. 1); Complaint, *New Mexico Cattle Growers' Association v. EPA*, No. 1:19-cv-988 (D.N.M. Oct. 22, 2019) (Dkt. 1); Supplemental Complaint, *Pierce v. EPA*, No. 0:19-cv-2193 (D. Minn. Oct. 22, 2019) (Dkt. 12). Proposed Business Intervenors sought to intervene before the Southern District of New York, but the case was voluntarily dismissed before the Court ruled on that unopposed motion.

2020). The proposed Business Intervenors have moved to intervene as defendants in that suit. *Id.*, Dkt. 43 (May 21, 2020) (motion pending).

Plaintiffs filed the current action to challenge the 2020 Rule. The parties, in a joint motion to stay the Repeal Rule litigation and a subsequent status report seeking further abeyance of the Repeal Rule case, agreed that the 2020 Rule "may affect the issues and arguments at play in [the Repeal Rule] litigation and other related legal challenges regarding the regulatory definition of 'waters of the United States.'" Mot. to Stay ¶ 6, *SCCCL II*, No. 19-cv-3006 (D.S.C. Feb. 14, 2020) (Dkt. 31); *id.*, Status Report ¶ 5 (D.S.C. May 20, 2020) (Dkt. 53) (same).

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 provides for intervention as of right and permissively. Pursuant to Rule 24(a), the district court must grant leave to intervene, upon timely application, when (1) a party has a sufficient interest in the subject matter of the underlying action, (2) "the denial of intervention would impair or impede the applicant's ability to protect its interest," and (3) "the applicant's interest is not adequately represented by the existing parties to the litigation." *SCCCL I*, 2018 WL 2184395, at *7. Thus, "intervention of right is dependent on the moving party's fulfillment of three requirements: interest, impairment of interest and inadequate representation." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989). In general, "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Maxum Indem. Co. v. Biddle Law Firm, PA*, 329 F.R.D. 550, 553 (D.S.C. 2019) (quoting *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (alterations omitted)).

Even where intervention is unavailable as of right, the Court may permit timely intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Backus v. South Carolina*, No. 3:11-CV-03120-HFF,

2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012). "Permissive intervention is left to the broad discretion of the Court and should be construed liberally in favor of intervention." *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. 9:12-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012). An important factor a court considers is whether "the nature and extent of the intervenors' interests" means that the "parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal questions presented." *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).

## ARGUMENT

### A.  Proposed Business Intervenors Are Entitled to Intervene as of Right.

The proposed Business Intervenors meet each requirement for intervention as Defendants as of right under Rule 24(a).

#### 1.  Intervention is Timely

The proposed Business Intervenors' motion to intervene is timely. In assessing timeliness, the Court considers "how far the suit has progressed, the prejudice that delay might cause other parties, and the reason for [any] tardiness in moving to intervene." *SCCCL I*, 2018 WL 2184395, at *8 (citing *Gould*, 883 F.2d at 286). Under any reasonable application of these criteria, the proposed Business Intervenors' motion is timely.

First, the litigation is in its infancy: Plaintiffs filed their complaint on April 29, 2020, and the EPA has not filed an answer or any other pleading. Indeed, no substantive motion practice has taken place since the complaint was filed. Second, intervention at this early stage would not prejudice any party. There is no issue here of intervention "derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) (internal quotations omitted), *rev'd sub nom. on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Rather, intervention will result in

no delay at all in the pleadings or disposition of the case. The proposed Business Intervenors submit a proposed Answer with this motion, and undertake to respond to any motions for summary judgment or other disposition of the case on the same schedule as the agencies. Third, there has been no improper delay. The proposed Business Intervenors file this motion within a month after Plaintiffs filed their complaint. Under all three criteria, the Business Intervenors' motion is timely. *See Maxum Indem. Co*., 329 F.R.D. at 553 (intervention timely where proposed intervenors "promptly filed their motion to intervene approximately one month after Plaintiff commenced this action" and, apart from defendant's filing an answer and appearance, "no other activity has occurred in this case"); SCCCL I, 2018 WL 2184395, at *8 (intervention timely where motion filed "within twenty-two days of the filing of the initial complaint" and "[n]o discovery has been conducted or dispositive motions decided").

### 2. The Proposed Business Intervenors Have a Legally Protectable Interest that May be Impaired Or Impeded By This Litigation

Courts in the Fourth Circuit grant intervention where a party shows a "significantly protectable" interest that risks impairment absent intervention. *Maxum Indem. Co.*, 329 F.R.D. at 554-55 (quoting *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)). The proposed Business Intervenors possess a significantly protectable interest in the action before this Court that may be impaired in this litigation for at least two reasons. First, the governing definition of WOTUS, the issue directly at stake in this litigation, dictates the regulatory scheme under which their members must operate. An unfavorable ruling would both heighten their regulatory burdens and thrust them back into the regulatory chaos that the 2020 Rule intends to correct. Second, the outcome of litigation stands to adversely impact their ability to protect their members' interests in related WOTUS litigation.

a. The proposed Business Intervenors possess a significant, legally protected interest in defending the 2020 Rule. As this Court previously found, "[c]ertainly, the business groups have an interest in the subject matter of the litigation [because] the industries that these business groups represent operate in a regulatory sphere that include regulations governing water usage in the United States." *SCCCL I*, 2018 WL 2184395, at *8.[5] It is equally clear that denial of intervention could impede the proposed Business Intervenors' abilities to protect this interest. Indeed, as this Court previously explained, if prior, more expansive rules were to be reinstated, that would "greatly affect the regulatory burdens and associated costs on the industries that the business groups represent." *Id.* at *9.

Numerous courts have held that regulated parties have a sufficient interest that may be impaired where the disposition of the lawsuit would impose costs on and interfere with their business activities. *See, e.g.*, *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 976 (8th Cir. 2014); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995–96 (10th Cir. 2009); *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (per curiam); *Sierra Club v. EPA*, 995 F.2d 1478, 1483 (9th Cir. 1993) (parties directly regulated by the CWA have a legally protected interest in suits that would "affect the[ir] use of real property"), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (a trade association generally has "a sufficient interest to permit it to intervene since the validity of a regulation from which its members benefit is challenged," where lifting the regulation "might well lead to significant changes in the profession and in the way [the members] conduct their businesses."); *see also* 7C C. Wright, A.

---

[5]   This Court did not resolve whether the proposed Business Intervenors were entitled to intervene as of right in *SCCCL I*, because the Court saw "no barriers to granting the businesses groups permissive intervention." *SCCCL I*, 2018 WL 2184395, at *9. While the same remains true here, the proposed Business Intervenors respectfully submit that they are also entitled to intervene as of right.

Miller & M. Kane, *Federal Practice & Procedure* § 1908.1 (3d ed. 2020) ("[I]n cases challenging various statutory schemes as . . . improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention").

That is the case here. The outcome of this litigation will directly affect the interests of the proposed Business Intervenors' members in their property—as the proposed Business Intervenors' expenditure of substantial resources, over many years of regulatory activity and litigation concerning WOTUS rules evidences. The proposed Business Intervenors and their members own and/or operate on real property and must comply with the CWA's prohibition against unauthorized "discharges" into any areas that are deemed jurisdictional. The CWA subjects them to criminal penalties and civil suits for failure to comply. If, as Plaintiffs request, this Court holds the 2020 Rule unlawful because it "strip[s] protections" from waters the CWA requires them to protect (Compl. ¶ 223) or impermissibly "exclud[es] traditional navigable waters" from the Act's jurisdiction (*id.* ¶ 231), the scope of the agencies' jurisdiction would enlarge, and the proposed Business Intervenors' members would be subjected to heightened regulatory burdens. Each would be required to comply with a broader definition of WOTUS and the CWA's prohibition against unauthorized "discharges." Further, depending on the outcome of the litigation, more members may be required to obtain costly permits.

Thus, the proposed Business Intervenors "have a substantial stake in the outcome of this litigation" that could be impaired if they are denied intervention. *See SCCCL I*, 2018 WL 2184395, at *9; *see also Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) ("[t]here can be no serious dispute" that an association had an interest in a lawsuit "given that it deals with the application of a performance standard that affects [its] members").

A holding in Plaintiffs' favor would also deprive regulated parties, including the proposed Business Intervenors' members, of much needed clarity and predictability. Since promulgation of the

legally-suspect 2015 Rule, regulated parties have been subjected to a flip-flopping and patchwork regulatory scheme. The 2020 Rule is the long-awaited conclusion of the agencies' efforts to repeal and replace the 2015 Rule with lawful and clear standards. Indeed, in promulgating the 2020 Rule, the agencies explained that the 2020 Rule "is intended to establish categorical bright lines that provide clarity and predictability for regulators and the regulated community" (85 Fed. Reg. at 22,325), as well as resolve the legal deficiencies of the 2015 Rule (*id.* at 22,272), many of which the proposed Business Intervenors have pointed out in comments and in other litigation.

A declaration that the 2020 Rule is unlawful would deprive the proposed Business Intervenors of those intended benefits and instead thrust the regulatory scheme back into the chaos that has prevailed since the promulgation of the illegal 2015 Rule. A taste of the likely chaos is apparent from the fact that the 2019 Repeal Rule—which would remain in place were the 2020 Rule invalidated—is also subject to vigorous challenge in various jurisdictions, including before this Court. Indeed, Plaintiffs challenge the legality of the 2019 Repeal Rule in that action, but here they challenge the 2020 Rule in part on its alleged "arbitrary and capricious . . . reversal" of the agencies' former practices under the 2019 Rule (Compl. at 64; *see also id.* ¶ 174). Were the 2020 Rule to be held invalid, regulated parties would lose any clarity or certainty over which WOTUS standards govern their conduct. To protect their interests, they deserve the right to litigate for a lawful WOTUS standard here.

b. The outcome of this lawsuit stands to impede the proposed Business Intervenors' significant interests in parallel litigation. The Business Intervenors are keenly interested in the fate of the 2020 Rule, as well as any litigation dictating the lawful definition of WOTUS under the CWA. They have consistently argued against a definition of WOTUS that violates the Constitution and unlawfully expands the agencies' regulatory jurisdiction under the CWA, and explained the need for regulatory predictability and consistency and a uniform approach, rather than a regulatory definition

that imposes significant and unjustified costs on their members. The proposed Business Intervenors have participated in the litigation regarding the lawful scope of the regulatory definition of WOTUS under the CWA at virtually every stage and in many courts, including the United States Supreme Court.

In addition to their role in every aspect of the WOTUS litigation to date, the proposed Business Intervenors, individually and/or through groups to which some of them belong, such as the Waters Advocacy Coalition ("WAC"), have participated at every step of the agencies' rulemaking involving WOTUS. They submitted comments on the original proposed 2015 Rule, the proposed Applicability Date Rule, the proposed Repeal Rule, and the proposed 2020 Rule that is at issue here.[6]

---

[6] *See, e.g.*, WAC, Comment Letter on 2015 Rule (Nov. 13, 2014), https://www.regulations.gov/document?D=EPA-HQ-OW-2011-0880-14568; WAC, Comment Letter on Applicability Date Rule (Dec. 13, 2017), https://www.regulations. gov/document?D=EPA-HQ-OW-2017-0644-0375; WAC, Comment Letter on Repeal Rule (Sept. 27, 2017), https://www.regulations.gov/document?D=EPA-HQ-OW-2017-0203-11027; WAC, Comment Letter on 2020 Rule (Apr. 29, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-6849. For individual comments regarding the 2020 Rule, *see* Am. Farm Bureau Fed'n, Comment Letter on 2020 Rule (April 19, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-11394; Am. Petroleum Inst., Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5456; Am. Road & Transp. Builders Ass'n, Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4366; Edison Electric Institute, Comment on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-8115; Nat'l All. of Forest Owners, Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4609; Nat'l Ass'n of Home Builders, Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4623; Nat'l Cattlemen's Beef Ass'n & Public Lands Council, Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4673; Nat'l Corn Growers Ass'n, Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4616; Nat'l Mining Ass'n, Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4608; Nat'l Stone, Sand, & Gravel Ass'n, Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4541; U.S. Chamber of Commerce, Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-4569; U.S. Poultry & Egg Ass'n, et al., Comment Letter on 2020 Rule (April 15, 2019), https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5441.

Thus, the requested relief would roll back regulatory gains that the proposed Business Intervenors have fought for years to obtain for the benefit of their members.

Most obviously, the outcome of this litigation will impact the litigation in which the proposed Business Intervenors participate to defend the 2019 Repeal Rule.[7] A final judgment here will bear directly on the issues involved in that litigation; and the scope of any final judgment in this Court may further complicate the regulatory landscape in ways relevant to the relief being considered in Repeal Rule suits. And any ultimate restoration of the 2015 Rule would also affect the proposed Business Intervenors' suits involving that Rule in courts around the country, which either remain open or may need to be revived under Federal Rule Civil Procedure 60(b). As the Fourth Circuit has recognized, intervention is warranted where a case would have an impact on parallel litigation to which intervenors are a party. *See Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986) ("an interest in preventing conflicting orders may be sufficient for intervention as of right"); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) ("the potential stare decisis effect" of a decision in one case on another "may supply that practical disadvantage which warrants intervention as of right"); *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265-66 (2d Cir. 1984) ("[T]here is a significant likelihood that the ultimate resolution of this litigation will lead to . . . conclusions of law on issues of first impression, or mixed findings of fact and law, . . . which would control any subsequent lawsuit by the intervenors").

---

[7]    Additionally, most of the proposed Business Intervenors here have also sought to intervene to defend the 2020 Rule in litigation before the Northern District of California. *See California v. Wheeler*, 20-cv-03005 (N.D. Cal. 2020) (Dkt. 43). Any ruling here risks a direct conflict with a ruling in that litigation.

### 3. The Agency Defendants Do Not Adequately Represent the Proposed Business Intervenors' Interests

The proposed Business Intervenors cannot rely on the Federal Defendants to represent their interests. A proposed intervenor's burden of showing inadequate representation is "minimal." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. Indeed, the Fourth Circuit has held that a district court abused its discretion to deny intervention where a government agency, tasked with "represent[ing] all of the citizens of the state," did not adequately represent the more specific interests of a nonprofit organization that represented "a subset of citizens." *In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991).

While the proposed Business Intervenors recognize that the Fourth Circuit has required a "strong showing of inadequacy" where the proposed intervenor shares the same objective as a government party, *see Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013), the proposed Business Intervenors here do not share the same objective as the agencies. Although the agencies and the proposed Business Intervenors both will argue, at the most general level, that the challenge to the 2020 Rule is meritless, their interests are distinctly different. As this Court previously explained when expressing doubt that the Business Intervenors and the agencies shared the same objectives,

> The EPA is, after all, in the business of protecting the environment—not protecting business interests. The EPA's stated motivation in enacting the [Rule] included, certainly, creating regulatory certainty for businesses such as the industries that the business groups represent. But it also involved policy considerations of what waters in the United States deserved protection under the Act.

*SCCCL*, 2018 WL 2184395, at *9. Certainly, the agencies' interests in the management of natural and economic resources is not the same as the interests of the proposed Business Intervenors in using, harvesting, or extracting those resources. As other Courts have recognized, the interest of private business is just one among many varied and often competing

18

constituencies represented by the agencies, which bear statutory obligations on behalf of the "general public." *Forest Conservation Council*, 66 F.3d at 1499 (internal quotations omitted). "The government must represent the broad public interest, not just the economic concerns" of a particular industry or industries. *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994). Further, as the history of the WOTUS litigation has shown, the proposed Business Intervenors and the federal government have often found themselves "on the opposite side[s] of the v." *SCCCL I*, 2018 WL 2184395, at *9. That is enough to satisfy the proposed Business Intervenors' obligation to demonstrate inadequate representation.

In addition, there is a risk that a change in Administration or policy could undermine the agencies' resolve to defend the merits of the 2020 Rule—exactly what happened in litigation regarding the 2015 Rule before the Southern District of Georgia and the Southern District of Texas. In both litigations, the agencies ultimately took no position regarding the merits of the 2015 Rule because of the agencies' ongoing rulemaking, such that only intervenor-environmental parties briefed those issues on summary judgment. *See* Opposition to Summary Judgment, *Texas v. EPA*, No. 3:15-cv-162 (S.D. Tex. Nov. 8, 2018) (Dkt. 170); Opposition to Summary Judgment, *Georgia v. Wheeler*, No. 2:15-cv-0079 (S.D. Ga. Oct. 10, 2018) (Dkt. 215).

And further, the agencies may not be willing to rigorously pursue appeals. While the agencies can be counted on to "stick up for [their] actions in response to [a challenge]," "if [they] lose[] the Solicitor General may decide that the matter lacks sufficient general importance to justify proceedings before the [appellate] court . . . or the Supreme Court." *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004). In other words, the proposed Business Intervenors have no guarantee that the agencies would exhaust their appellate remedies in the event of an unfavorable decision from this Court. That was the case when the proposed Business Intervenors petitioned for certiorari from the Sixth Circuit's denial of their motion to dismiss petitions for review of the agencies' action and

the agencies vigorously opposed certiorari. The agencies continued to oppose the petition in the Supreme Court on the merits, losing in a 9-0 ruling. *See Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 624.

Intervention is therefore necessary to ensure that the proposed Business Intervenors are placed "on equal terms" and allowed "to make their own decisions about the wisdom of carrying the battle forward" should the need arise. *Sierra Club*, 358 F.3d at 518. The proposed Business Intervenors also believe that their experience in the prior litigation and rulemaking, and their different outlook from the agencies as regulated parties, will assist the Court in resolving this action.

## B. Alternatively, the Proposed Business Intervenors Should Be Allowed to Intervene Permissively.

Because the proposed Business Intervenors are entitled to intervene as of right, the Court need not decide whether they should be permitted to intervene. But if the Court believes otherwise, it should exercise its discretion to grant leave to intervene under Rule 24(b). That rule provides that a court may allow a party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Rule 24(b) is to be construed liberally in favor of intervention." *Backus*, 2012 WL 406860, at *2.

For the same reasons that make intervention proper as of right, as well as for the same reasons that this Court previously permitted the proposed Business Intervenors to intervene in prior WOTUS Rule litigation, the Court should grant permissive intervention here. Just as before, it cannot be seriously disputed that the defenses the proposed Business Intervenors seek to bring "share a common question of law or fact with the main action." *SCCCL I*, 2018 WL 2184395, at *9. The proposed Business Intervenors' defenses against the Plaintiffs' complaint will involve common questions of law and fact regarding the Federal Defendants' obligations under the CWA and the APA.

And, also just as before, "the business groups filed timely motions to intervene and have a substantial stake in the outcome of this litigation." *SCCCL I*, 2018 WL 2184395, at *9. Permitting the proposed Business Intervenors to intervene to defend the 2020 Rule would also allow them to vindicate their substantial interests and, given their prompt action, would neither delay this case nor prejudice any of the parties. *See McDonald v. E. J. Lavino Co*., 430 F.2d 1065, 1074 (5th Cir. 1970) ("[I]t has been the traditional attitude of the federal courts to allow intervention 'where no one would be hurt and greater justice would be attained'" (citation omitted)). Here, the proposed Business Intervenors have filed a proposed Answer in conjunction with this motion, and they undertake to respond to any motion in the same time frame as the agencies. Thus, the proposed Business Intervenors should be permitted to intervene permissively if not as of right.

## CONCLUSION

For the foregoing reasons, the proposed Business Intervenors respectfully request that the Court grant the motion to intervene.

Dated: May 28, 2020                    Respectfully submitted,

                                       /s/ *W. Thomas Lavender, Jr.*

                                       W. Thomas Lavender, Jr.
                                       Joan Wash Hartley
                                       Nexsen Pruet, LLC
                                       1230 Main Street, Suite 700
                                       Columbia, SC 29201
                                       (803) 253-8233
                                       TLavender@nexsenpruet.com
                                       jhartley@nexsenpruet.com

                                       Timothy S. Bishop*
                                       Colleen M. Campbell*
                                       MAYER BROWN LLP
                                       1999 K Street NW
                                       Washington, DC 20006
                                       (202) 263-3000
                                       tbishop@mayerbrown.com
                                       ccampbell@mayerbrown.com

Brett E. Legner*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
blegner@mayerbrown.com

*Attorneys for Proposed Intervenor-Defendants*

* *pro hac vice* motions forthcoming

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on May 28, 2020, I electronically filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of South Carolina on all parties registered for CM/ECF in the above-captioned matter.

<u>/s/ *W. Thomas Lavender, Jr.*</u>