**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

SOUTH CAROLINA COASTAL
CONSERVATION LEAGUE, et al.,

      Plaintiffs,

v.

MICHAEL REGAN, in his official capacity
as Administrator of the United States
Environmental Protection Agency, et al.,

      Defendants,

and

AMERICAN FARM BUREAU
FEDERATION, et al.,

      Intervenor-Defendants,

and

CHANTELL SACKETT and MICHAEL
SACKETT,

      Proposed Intervenor-Defendants.

**Civil Action No. 2:20-cv-01687-BHH**

**CHANTELL & MICHAEL SACKETTS' MOTION TO INTERVENE AND
INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, Proposed Intervenor-Defendants Chantell and Michael Sackett ("the Sacketts") respectfully move to intervene as of right in this action as Defendants. In the alternative, the Sacketts move pursuant to Rule 24(b) for leave to intervene permissively. The motion is based on this motion to intervene and incorporated

memorandum of law; the declaration submitted with this motion; the documents previously filed in this action; and any other material the Court may consider in the briefing of this matter.

Pursuant to Local Civil Rule 7.02, counsel for the Sacketts conferred with the existing parties to determine their positions on this motion and were informed that Plaintiffs oppose the Sacketts' motion to intervene. The Federal Defendants take no position on the Sacketts' motion and Intervenor-Defendants do not oppose the Sacketts' intervention. The Sacketts submit their proposed Answer in Intervention, attached to this motion as Attachment 1.

## SUMMARY OF THE NATURE OF THE CASE

On April 29, 2020, Plaintiffs South Carolina Coastal Conservation League, *et al.* ("Plaintiffs") filed this lawsuit to challenge the U.S. Environmental Protection Agency ("EPA") and the U.S. Department of the Army's ("Army") (together "the Agencies") adoption of a final rule called the Navigable Waters Protection Rule ("Navigable Waters Protection Rule" or "Rule"), defining "navigable waters" or "waters of the United States" under the Clean Water Act. ECF No. 1 ¶¶ 1, 3; *see* 85 Fed. Reg. 22,250 (Apr. 21, 2020). Plaintiffs allege that the Navigable Waters Protection Rule's revised definition of "waters of the United States" was promulgated in violation of the Administrative Procedure Act and the Clean Water Act, contradicts the Clean Water Act's objectives, and contravenes Supreme Court precedent. ECF No. 1 ¶¶ 1–19. Plaintiffs ask the Court to vacate and set aside the Rule in its entirety. ECF No. 1 at 79.

The Sacketts seek leave to intervene in this lawsuit to defend the portion of the rule which defines "adjacent wetlands." *See* 33 C.F.R. § 328.3(c)(1) (effective June 22, 2020); 40 C.F.R. § 120.2(3)(i) (effective June 22, 2020).[1] The Sacketts are entitled to intervention as of right. Fed.

---

[1] Subsequent references to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338–39, and the identical provisions at 40 C.F.R. § 120.2, published the same date at 85 Fed. Reg. at 22,340–41. 40 C.F.R. § 120.2(3)(i) corresponds to 33 C.F.R. § 328.3(c)(1).

R. Civ. P. 24(a). The motion is timely and the Sacketts are prepared to comply with the existing briefing schedule in the case; the Sacketts have a significant interest that relates to the subject of this litigation based on their ownership and use of private land which EPA has claimed contains regulated wetlands under the Clean Water Act; that interest will be impaired if they cannot defend it in this lawsuit; and neither the Agencies, nor the existing Intervenor-Defendants, can adequately represent the interests of the Sacketts. This Court may alternatively exercise its discretion to grant the Sacketts permissive intervention pursuant to Rule 24(b) because the Sacketts' defense of the Navigable Waters Protection Rule shares a common question of law or fact with Plaintiffs' challenge, and the Sacketts' intervention will not unduly delay or prejudice the adjudication of this matter. Fed. R. Civ. P. 24(b).

## STATEMENT OF FACTS

### I.  The Clean Water Act and the Definition of "Navigable Waters"

The controversy, in this case, centers on EPA and the Army's attempts to define "navigable waters" within the meaning of the Clean Water Act. That Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8).

Nonexempt discharges require a permit from either EPA or the Army, such as a "dredge and fill" permit under 33 U.S.C. § 1344. Obtaining a dredge and fill permit from the Army takes an average of more than two years and $250,000 in consulting costs. *See Rapanos v. United States*, 547 U.S. 715, 721 (2006). Once obtained, a dredge and fill permit substantially limits how property encumbered by "navigable waters" can be used by its owner. *See generally* Daniel R.

Mandelker, *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018).

A person engaged in unpermitted, nonexempt discharges or permit violations faces citizen suits, administrative cease-and-desist and compliance orders, administrative penalties, civil actions for monetary penalties and injunctive relief, and criminal prosecution. *See generally Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52–53 (1987). These severe burdens make it critically important that the regulated public know what is meant by "navigable waters."

There have been multiple failed attempts to define that term over the years. In 1986, the Army adopted an updated regulatory definition that stretched the term "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as "bordering, contiguous, or neighboring") to regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations); *id.* § 328.3(a)(7) & (c) (1987) (defining adjacent wetlands).

In 2006, a divided Supreme Court rejected this definition as exceeding the scope of the statutory term "navigable waters." *Rapanos*, 547 U.S. at 739. In assessing the legality of the 1986 Regulations, a four-Justice plurality determined that the language, structure, and purpose of the Clean Water Act restrict federal authority over non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, with an immediate surface water connection making the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy provided a fifth vote rejecting the 1986 Regulations defining "adjacent wetlands" as overbroad, joining the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland

if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779–80 (Kennedy, J., concurring). Justice Kennedy wrote that wetlands could be analyzed under this standard either standing alone or in combination with features "similarly situated" within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

In 2015, after several years of effort to address *Rapanos*, EPA and the Army adopted new regulations redefining "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015) (the 2015 Rule). Several lawsuits challenged the 2015 Rule. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgment that the 2015 Rule violated the Clean Water Act and permanently enjoined and remanded it without vacatur. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382–83 (S.D. Ga. 2019). A short time later, partially in response to the decision in *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Rule and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the 2019 Repeal Rule).

On April 21, 2020, EPA and the Army again redefined "navigable waters" by publishing the Navigable Waters Protection Rule. 85 Fed. Reg. 22,250 (Apr. 21, 2020). Among other things, this Rule—which took effect on June 22, 2020—redefines "adjacent wetlands," 33 C.F.R. § 328.3(a)(4), as wetlands that abut or are flooded by other regulated waters or are physically separated from such waters only by natural barriers or by permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)–(iv).

On January 20, 2021, shortly after taking office, President Biden signed Executive Order 13990. *See* 86 Fed. Reg. 7037, 7037 (Jan. 25, 2021). Executive Order 13990 directs the heads of the Agencies to "review all existing regulations . . . promulgated . . . between January 20, 2017, and January 20, 2021," and "consider suspending, revising, or rescinding" any actions

inconsistent with the policies of the new administration. *Id.* The Agencies are currently reviewing the Navigable Waters Protection Rule pursuant to Executive Order 13990 and have indicated that this review may lead to modification or withdrawal of the Rule and a new regulatory definition of "navigable waters." *See* ECF No. 105 at 5.

## II.    This Lawsuit

This challenge was filed on April 29, 2020. On June 11, 2020, a group of national trade associations led by American Farm Bureau Federation (the "Business Intervenors"), were granted leave to intervene as Intervenor-Defendants. ECF No. 29. The parties subsequently completed summary judgment briefing in accordance with the Court's schedule. ECF Nos. 58, 68–70, 73, 80, 81. On March 1, 2021, the Agencies moved to hold this case in abeyance for ninety days, to enable review of the Rule in accordance with Executive Order 13990 and a decision regarding their future willingness to defend the Rule. ECF No. 105. On March 2, 2021, the Court stayed proceedings for sixty days, dismissed the parties' cross-motions for summary judgment without prejudice, and gave the parties leave to refile their summary judgment motions at the conclusion of the stay. ECF No. 106. Following the expiration of that sixty-day stay, this Court entered an order setting new deadlines for briefing on summary judgment. ECF No. 118. Under that order, Plaintiffs filed their summary judgment motion on May 21, 2021. *See* ECF No. 119. The Agencies' response is due on June 18, 2021, any Intervenor-Defendants' responses are due on June 25, 2021, and the case will be fully briefed by July 30, 2021. ECF No. 118.

## III.    Applicants

Applicants for intervention Chantell and Michael Sackett have fought a fourteen-year battle with EPA over permission to build a house on their residential lot in Priest Lake, Idaho. The Navigable Waters Protection Rule currently allows the Sacketts to build without a dredge and

fill permit from the Army, but Plaintiffs' challenge to the Rule threatens that long-delayed opportunity. The Sacketts' lot is the subject of an EPA jurisdictional determination and compliance orders issued in 2007 and 2008.[2] Declaration of Chantell Sackett ¶¶ 7–9, and Exhs. A & B. EPA asserts that it has Clean Water Act authority over the lot because it contains "adjacent wetlands" under the regulations then in effect. *Id*. EPA's administrative record of the jurisdictional determination establishes that the Sacketts' lot has no surface water connection to any other surface water and is separated from the closest surface water by an impermeable artificial barrier (a road with no culverts under it). *Id.* ¶¶ 3–4, 9, and Exhs. A & B.

The Sacketts' challenge to EPA's assertion of Clean Water Act authority over their lot was the subject of the Supreme Court of the United States' decision in *Sackett v. EPA*, 566 U.S. 120 (2012) (federal district courts have jurisdiction under the Administrative Procedure Act to review EPA compliance orders as final agency action). Following remand, the District of Idaho upheld EPA's assertion of regulatory authority, and EPA continues to maintain that the Sacketts' lot is regulable under the definition of "adjacent wetlands" in effect in 2008. Order, *Sackett v. EPA*, No. 2:08-cv-00185-EJL (D. Idaho Mar. 31, 2019), ECF No. 120. The Sacketts' appeal of that decision is currently pending in the Ninth Circuit, with oral arguments heard on November 19, 2020, and supplemental briefing addressing the effect of the Navigable Waters Protection Rule on the appeal completed on April 9, 2021. *See* Minute Order Re: Case Argued and Submitted, *Sackett v. EPA*, No. 19-35469 (9th Cir. Nov. 19, 2020), Dkt. #43; Supplemental Brief of Defendants-Appellees *Sackett v. EPA*, No. 19-35469 (9th Cir. Apr. 9, 2021), Dkt. #54.

---

[2] EPA withdrew the compliance order on March 13, 2020, but refuses to withdraw the jurisdictional determination. *See* Declaration of Chantell Sackett ¶ 13.

As a result of this ongoing legal dispute with EPA, the Sacketts have been unable to build a home on their residentially-zoned vacant lot for the last fourteen years. Sackett Decl. ¶ 10 (explaining that as long as EPA claims authority over their property, the Sacketts will be unable to build a house because they cannot afford an Army permit and because EPA's administrative record reveals that an Army permit for home building would not be issued). However, under the Navigable Waters Protection Rule's revised definition of "adjacent wetlands," the Sacketts' property is excluded from agency authority under the Clean Water Act. *See* 33 C.F.R. § 328.3(c)(1); Sackett Decl. ¶ 15. The lot's lack of surface water connection to any other surface water and its separation from the closest surface water by an impermeable artificial barrier (an elevated road) preclude Clean Water Act regulation under the new Rule. Sackett Decl. ¶¶ 3–4, 9, and Exhs. A & B; 33 C.F.R. § 328.3(c)(1)(i)–(iv). As such, the Sacketts are finally able to build a home on their long-vacant lot without first obtaining the Army's permission. Plaintiffs' challenge to the Rule, if successful, would reverse the exclusion of the Sacketts' property from Clean Water Act regulation and return the Sacketts' property to EPA's asserted control.

## ARGUMENT

## I.    The Sacketts Satisfy Rule 24(a) and Should Be Granted Intervention as of Right

An applicant may intervene as of right under Rule 24(a) if: (1) "its application is timely;" (2) it "claims an interest relating to the property or transaction which is the subject of the action;" (3) "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest;" and (4) the applicant's interest is not "adequately represented by existing parties." *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 867 (4th Cir. 2001) (quoting Fed. R. Civ. P. 24(a)). As such, "in addition to timeliness, intervention of right is dependent on the moving party's fulfillment of three requirements: interest,

impairment of interest and inadequate representation." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).

In applying Rule 24, the Fourth Circuit has "note[d] that liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

The Sacketts satisfy each element of the Rule 24(a) test and therefore qualify for intervention of right.

### A.    The Sacketts' Motion To Intervene Is Timely

In assessing the timeliness of a motion to intervene, the Fourth Circuit examines three factors: (1) "how far the suit has progressed," (2) "the prejudice that delay might cause other parties" and (3) "any "reason for . . . tardiness in moving to intervene." *Scardelletti v. Debarr*, 265 F.3d 195, 202–03 (4th Cir. 2001) (citing *Gould*, 883 F.2d at 286), *rev'd sub nom. on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002). "Mere passage of time is but one factor to be considered in light of all the circumstances." *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (citing *Atkins v. State Bd. of Educ. of N.C.*, 418 F.2d 874 (4th Cir. 1969)).

Under the first consideration, although this lawsuit began on April 29, 2020, the parties' cross-motions for summary judgment were dismissed on March 2, 2021, and a new scheduling order was entered on May 17, 2021. ECF Nos. 106, 118. So, this litigation is again in a preliminary posture. No substantive matters have been ruled on and the Sacketts move to intervene within one month of the stay expiring and two weeks of the Court entering the current scheduling order. ECF Nos. 106, 118. Briefing on summary judgment started just one week ago, and Intervenor-Defendants' briefs are not due until June 25, 2021. ECF No. 118.

Second, because intervention is sought prior to any substantive progress in the case, it will not prejudice the parties nor result in any disruption or delay. The Sacketts have attached their proposed Answer in Intervention and agree to be bound by the schedule and page limits outlined in ECF No. 118. The Sacketts' participation will not in any way delay the briefing schedule or prejudice any party. Under such circumstances, intervention is timely. *See Spring Constr. Co.*, 614 F.2d at 377 (finding intervention timely where no party would be prejudiced).

Regarding the third consideration, Rule 24(a) "does not attempt to . . . specify rigid time limits." *Scardelletti*, 265 F.3d at 202–03 (quoting *United States v. South Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)). Instead, a "prospective intervenor generally must move promptly for intervention as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" *Id.* (quoting *South Bend Cmty. Sch. Corp.*, 710 F.2d at 396.

Since January 20, 2021, courts across the country have almost uniformly stayed challenges to the Rule while the Agencies review it in accordance with Executive Order 13990.[3]  Almost all of those stays remain in effect.[4] The stay in this case expired on May 1, and the case is now one of the few scheduled to proceed to the merits. *See* ECF No. 118. With merits briefing proceeding

---

[3] *See* Order, *California v. Regan*, No. 20-cv-03005 (N.D. Cal. Apr. 16, 2021) ECF No. 241; Order, *Waterkeeper All. v. Regan*, No. 3:18-cv-03521 (N.D. Cal. Feb. 16, 2021), ECF No. 103; Order Granting Parties' Joint Mot. to Hold Cases in Abeyance, *Chesapeake Bay Found. v. Regan*, Nos. 20-cv-1063, 20-cv-1064 (D. Md. Feb. 2, 2021), ECF No. 48; ECF No. 241; Order, *Murray v. Regan*, No. 19-cv-1498 (N.D.N.Y. Feb. 2, 2021), ECF No. 42; Minute Order Granting Joint Mot. to Hold in Abeyance, *Envtl. Integrity Project v. Regan*, No. 20-cv-1734 (D.D.C. Jan. 28, 2021).

[4] Only one other challenge to the Rule is currently scheduled to proceed to the merits. *See Pascua Yaqui Tribe v. EPA*, No. CV-20-00266-TUC-RM (D. Ariz. June 22, 2020). In that case the Agencies' motion to stay was denied on April 12, 2021, and summary judgment briefing began on May 11, 2021. *See Pascua Yaqui*, No. CV-20-00266-TUC-RM, ECF Nos. 32 and 47. The Sacketts were granted leave to intervene in that case on May 14, 2021. *See* Order, *Pascua Yaqui*, No. CV-20-00266-TUC-RM, ECF No. 70.

in this case where it is stayed elsewhere, and the Agencies now indicating that they may not defend the Rule, the Sacketts now face a new and urgent need for party status in this case. ECF No. 105 at 5 (noting "that the Agencies' review of the NWPR may ultimately lead to a significant modification or withdrawal of the rule"). For this reason, the District of Arizona found the Sacketts' recent intervention motion in the *Pascua Yaqui* case timely and granted them leave to intervene in the only other challenge to the Navigable Waters Protection Rule currently scheduled to proceed to the merits. *See* Order, *Pascua Yaqui*, No. CV-20-00266-TUC-RM, ECF No. 70 (D. Ariz. May 14, 2021) (holding that the Sacketts' motion, filed almost one year after the initial complaint, was "timely given the recent change in administration and Environmental Protection Agency leadership . . . ."). The Sacketts have moved to intervene promptly in this case as well, within two weeks of learning that this case will proceed to the merits, and this motion is therefore timely under the third Fourth Circuit factor. *Cf. Scardelletti*, 265 F.3d at 203.

This motion is timely.

### B.    The Sacketts' Interests Relate to the Subject of This Litigation

To intervene as of right, a party must have an "interest relating to the property or transaction that is the subject of the action . . . ." Fed. R. Civ. P. 24(a)(2). Although the Rule "does not specify the nature of the interest required for a party to intervene as a matter of right," the Fourth Circuit has held that intervention must be granted where the applicant shows a "significantly protectable interest." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The Fourth Circuit has recognized the existence of a "significantly protectable interest" where the applicants would "stand to gain or lose by the direct legal operation of the district court's judgment on . . . [the Plaintiff's] complaint." *Id.*

The Sacketts have a significant interest in this litigation based on their ownership and use of private land, which defendant EPA has claimed since 2007 contains wetlands regulated under the Clean Water Act. As discussed above, the Sacketts own a residential lot in Priest Lake, Idaho, which, prior to the Agencies' adoption of the Navigable Waters Protection Rule, EPA determined is subject to federal permitting authority under the Clean Water Act. Sackett Decl. ¶¶ 7, 9. Plaintiffs seek nationwide vacatur of the Navigable Waters Protection Rule. ECF No. 1 at 79. If Plaintiffs prevails in this litigation, the Agencies' 2020 redefinition of "adjacent wetlands" will be set aside, and the significant regulatory relief afforded the Sacketts by the Navigable Waters Protection Rule would be reversed. Sackett Decl. ¶ 17. The practical outcome of this litigation would be the return of the Sacketts' property to Clean Water Act regulation. *Id.* Therefore, the "direct legal operation" of the Court's judgment on Plaintiffs' complaint would significantly affect their interests in their Idaho property. *See Teague*, 931 F.2d at 261. Indeed, because they are directly subject to the regulations at issue, their interests easily qualify them for intervention. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (noting that there is "ordinarily little question" of standing for the object of a regulation).

As such, the Sacketts have significant protectable interests in this action as private landowners.

### C.    Disposition of This Action May Impair or Impede the Sacketts' Interests

The threshold for demonstrating potential impairment of interests is low, as Rule 24(a)'s requirement addresses whether, as a "practical" matter, a denial of intervention would impede a prospective intervenor's ability to protect its interests. *Maxum Indemnity Co. v. Biddle Law Firm, PA*, 329 F.R.D. 550, 555 (D.S.C. 2019) (citing *Feller*, 802 F.2d at 730). *See also Newport News v. Peninsula Shipbuilders*, 646 F.2d 117, 121 (4th Cir. 1981) (finding intervention appropriate

where the outcome of the proceeding caused a "practical disadvantage or impediment" to the applicants).

The Sacketts' interests in their Idaho property may be impaired or impeded if they are denied intervention. If Plaintiffs prevail and the Navigable Waters Protection Rule's definition of "adjacent wetlands" is enjoined or set aside, that will alter the regulations that govern the Sacketts' use of their property, to their detriment. This would constitute a substantial "practical" impairment of the Sacketts' interests. As the Advisory Committee Notes to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 advisory committee note to 1966 amendment.

### D.    No Party Adequately Represents the Sacketts' Interests

#### 1.    EPA and the Army Do Not Adequately Represent the Sacketts' Interests

The inadequate representation requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 515 (E.D. Va. 2007) ("There is good reason in most cases to suppose that the applicant is the best judge of the representation of his own interest and to be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties." (quoting 7C Wright & Miller, *Federal Practice & Procedure* § 1909 (2d ed. 1986))). The Agencies are reconsidering their willingness to defend the Rule at all, and the Sacketts easily meet their minimal burden.[5] ECF

_____

[5] The *Stuart* presumption of adequacy of representation does not apply in this case. *See Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013). The *Stuart* presumption only applies where a private

No. 105 at 5 (noting that "that the Agencies' review of the NWPR may ultimately lead to a significant modification or withdrawal of the rule"). Given that the Agencies have repeatedly sought to pause litigation against the Navigable Waters Protection Rule in contemplation of their potentially abandoning its defense, it is hard to imagine how they could adequately represent the Sacketts' interests in maintaining the Rule going forward. *See supra* note 3 and surrounding text. This is especially true given that merits briefing has now started. *See* ECF No. 119.

Further, even if the Agencies were to resume their defense of the Rule, the Sacketts do not share EPA and the Army's objectives in defending the "adjacent wetlands" provisions of the Navigable Waters Protection Rule. Their objectives differ as to both underlying interests and legal position. There would thus be no presumption of adequate representation, and the Sacketts have met the "minimal" threshold for demonstrating that the Agencies will not adequately represent their interests. *See Stuart*, 706 F.3d at 350.

EPA and the Army's objectives in defending the rule diverge significantly from the Sacketts' objectives. The Agencies have reported several broad public interests in promulgating the Rule, including to "protect navigable waters from pollution while providing an implementable approach to determining regulatory jurisdiction under the CWA." 85 Fed. Reg. at 22,262. In contrast, the Sacketts' narrow and specific objective is to defend their freedom to build a home on a 2/3-acre residential lot in Priest Lake, Idaho. Sackett Decl. ¶ 3. As private landowners whose ability to develop, use, and enjoy their residential property is protected by the challenged regulations, the Sacketts have direct and specific objectives in defending the Navigable Waters

---

applicant "share[s] the same ultimate objective" as a government defendant. *See id*. And the Fourth Circuit recently declined to extend *Stuart* "beyond its context of a private citizen seeking to intervene *to defend the constitutionality of a state law*," observed that Rule 24(a) "itself imposes no presumption," and noted that "any judicially created presumption should be undertaken with care." *N.C. State Conference of the NAACP v. Berger*, 970 F.3d 489, 507 (4th Cir. 2020). This is clearly not a case of shared objectives and any presumption is inapplicable.

Protection Rule that the general public lacks. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (allowing intervention by an entity that "represent[s] only a subset of citizens" with specific concerns not shared by the government defendant); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001) (collecting cases from the First, Fourth, Fifth, Eighth, and Ninth Circuits favoring intervention where the government's focus on "broad public interests" caused it to diverge from the "narrower interests" of a private party). These differing objectives show that the Agencies do not adequately represent the Sacketts' interests.

And, the Sacketts' legal objectives in defending the Rule's definition of "adjacent wetlands" diverge dramatically from those of EPA and the Army. In this case, the Agencies have consistently taken the position that the Rule's definition of "adjacent wetlands" is an allowable exercise of agency discretion, entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005). *See* ECF No. 70-1 at 18–26.[6] By contrast, the Sacketts will argue that the Rule's new and narrower definition of "adjacent wetlands" is not a matter of agency discretion, but is *legally compelled* by Supreme Court precedent—i.e. the controlling plurality opinion in *Rapanos*. *See* 547 U.S. at 719, 756. A ruling in the Sacketts' favor would thus mean that the Agencies cannot later reverse the Rule's "adjacent wetlands" definition through a subsequent rulemaking. But the Agencies have expressly rejected the Sacketts' position. *See* 85 Fed. Reg. at 22,273 (rejecting the suggestion that the *Rapanos* plurality controls). In other words, the Sacketts seek a ruling that contradicts the Agencies' position that the Navigable Waters

---

[6] This has been the consistent litigation position of the Agencies. *See* Appellants' Opening Brief at 26–35, *Colorado v. EPA*, No. 20-1238 (10th Cir. July 9, 2020), Doc. No. 010110374057 at 38–47 (arguing for *Chevron* deference); Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment at 12–17, *Conservation Law Found. v. EPA*, No. 1:20-cv-10820-DPW (D. Mass. Dec. 3, 2020), ECF No. 46 at 22–27 (same).

Protection Rule, as it applies to wetlands, was an exercise of discretionary agency interpretation. The Agencies therefore cannot adequately represent the Sacketts' interests. *See*, *e.g.*, *Feller*, 802 F.2d at 730 (finding inadequate representation where the government "has made clear its intention to argue against . . . an interpretation preferred by intervenors.").

Indeed, the Agencies' inconsistency on the issues raised in this case creates serious doubts as to their ability to steadfastly advance the Sacketts' interests. In its redefinition of regulated wetlands, the challenged Rule reverses earlier rules issued by the very same agencies. And these conflicting rules are of a very recent vintage. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019); 80 Fed. Reg. 37,054 (June 29, 2015). Given the vicissitudes of agency politics, there is considerable doubt that the Agencies will be capable of representing the Sacketts' interests throughout the course of the litigation. This is underscored by the fact that one likely outcome of the Agencies' Executive Order 13990 review is the use of their claimed discretion to once again reverse course on how they interpret the term "navigable waters." *See* ECF No. 105 at 5.

Finally, even where the presumption of adequate representation applies, it is overcome where there is an "adversity of interest" between the applicant for intervention and the government party. *Stuart*, 706 F.3d at 349. The differences in objectives between the Sacketts and the Agencies constitutes a genuine "adversity in interest" that overcomes any presumption. The Sacketts and EPA are presently adverse parties in pending litigation over whether the Clean Water Act applies to their property, *see Sackett v. EPA*, No. 19-35469 (9th Cir.), which has been ongoing for thirteen years. Sackett Decl. ¶ 12. Throughout that time, EPA has argued for deference to its interpretations of "navigable waters" and "adjacent wetlands."[7] And EPA has likewise argued for deference in

---

[7] *See, e.g.*, United States Combined Memorandum at 10, 19, *Sackett v. EPA*, No. 2:08-cv-00185-EJL (D. Idaho Nov. 20, 2015), ECF 105-1 (arguing for deference to EPA interpretation of adjacent wetland regulations as applied to the Sacketts' property).

this case. *See* ECF No. 70-1 at 18–26. The Sacketts have therefore sought intervention in this case partly out of a concern that in its defense of the Rule on discretionary grounds, EPA is protecting its litigation position against the Sacketts that the prior version of the regulations were also a valid exercise of discretionary agency decision making. The Sacketts' desire to intervene is thus motivated by significantly more than a matter of conduct or strategy. *See Stuart*, 706 F.3d at 353. It is motivated by a genuine, and ongoing, "adversity of interest" to that of the Agencies.

The Agencies do not adequately represent the Sacketts' interests.

### 2.     No Other Party Adequately Represents the Sacketts' Interests

The Business Intervenors will not adequately represent the Sacketts' interests either. The Sacketts and the Business Intervenors do not share the same ultimate objectives in this litigation and the Business Intervenors are not representative of the Sacketts' interests. As such, the Sacketts comfortably satisfy the "minimal" showing required that the Business Intervenors will not represent their interests. *Trbovich*, 404 U.S. at 538 n.10.

First, the Business Intervenors have rejected the Sacketts' legal arguments. Instead, like the Agencies, the Business Intervenors have argued in this case that although the Navigable Waters Protection Rule (including its definition of "adjacent wetlands") is "consistent" with the Clean Water Act, it is not compelled. *See* ECF No. 68-1 at 40–42 (rejecting the Sacketts' argument that the plurality in *Rapanos* is controlling precedent and arguing for *Chevron* deference). This demonstrates a substantially different objective to the Sacketts and clear lack of adequate representation. Should the Business Intervenors be successful in making this argument, EPA would retain its discretion to define "adjacent wetlands." That discretion includes the flexibility to revise the applicable regulations following the ongoing review under Executive Order 13990,

so as to again include a wider portfolio of wetlands, including those alleged to exist on the Sacketts' property.

Second, the Business Intervenors are a group of national trade associations who advocated for the Rule on behalf of their industry members. ECF No. 22 at 16–17. The Sacketts are a couple in Idaho who own a modestly sized vacant lot and want to build a home on it. Sackett Decl. ¶ 3. Their interests, in this case, are not those of business landowners or commercial housing developers. *Id*. As such, the Sacketts' narrow interest in a specific plot of land in Idaho is not represented by the Business Intervenors' interest in the nationwide application of the Rule to numerous unrelated industry sectors. *See* ECF No. 22 at 14.

Therefore, the Sacketts should be admitted as parties to this litigation.

## II.    In the Alternative, the Sacketts Satisfy the Standard for Permissive Intervention

If the Court denies the Sacketts' motion to intervene as of right, it should alternatively grant them permission to intervene pursuant to Rule 24(b). On timely motion, the Court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." *Stuart*, 706 F.3d at 355 (quoting Fed. R. Civ. P. 24(b)(1)(B)). District courts have broad discretion to grant intervention under the permissive standard. *See Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 385–86 (4th Cir. 1982) ("a decision on a Rule 24(b) motion lies within the sound discretion of the trial court"); *see also Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. 9:12-cv-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012) ("Permissive intervention is left to the broad discretion of the Court and should be construed liberally in favor of intervention."). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998) (quoting *SEC v. U.S. Realty & Improvement Co.*, 310

U.S. 434, 459 (1940)). Rather, a party who raises a question of law or fact in common with the main action should be allowed to intervene as long as doing so will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Sacketts' defense of the challenged rule raises questions of law or fact in common with Plaintiffs' claims and EPA and the Army's defenses. For instance, the argument that Supreme Court precedent compels the Rule's definition of regulated wetlands raises a question of law—whether Justice Scalia's plurality opinion or Justice Kennedy's concurring opinion in *Rapanos v. United States* controls—that is also raised by Plaintiffs' complaint. *See* ECF No. 1 ¶¶ 12, 81, 82, 84, 114. And because the Sacketts have sought intervention within one week of merits briefing resuming, and almost one month before their brief as intervenor-defendants would be due, it will not unduly prejudice any of the parties nor result in significant disruption or delay. Fed. R. Civ. P. 24(b)(3). Therefore, were the Court to conclude that the Sacketts lack a right to intervene, it should allow intervention permissively under Rule 24(b).

## CONCLUSION

The Sacketts should be granted intervention of right or, in the alternative, should be granted permissive intervention.

DATED:  May 28, 2021.

Respectfully submitted,

s/Christopher Mills
CHRISTOPHER MILLS
D.S.C. Bar No. 13432
Spero Law LLC
1050 Johnnie Dodds Blvd., #83
Mount Pleasant, SC 29465
Telephone: (843) 606-0640
Email: cmills@spero.law

ANTHONY L. FRANÇOIS*
CHARLES T. YATES*
Pacific Legal Foundation
930 G Street
Sacramento, CA  95814
Telephone:  (916) 419-7111
Email:  afrancois@pacificlegal.org
Email:  cyates@pacificlegal.org

*Attorneys for Proposed Intervenor-Defendants
Chantell and Michael Sackett*

* *pro hac vice* motions forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that, on May 28, 2021, I filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of South Carolina on all parties registered for CM/ECF in the above-captioned matter.

s/Christopher Mills
CHRISTOPHER MILLS