**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, et al.,

Plaintiffs,

v.

MICHAEL REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency, et al.,

Defendants,

and

AMERICAN FARM BUREAU FEDERATION, et al.,

Intervenor-Defendants,

and

CHANTELL SACKETT and MICHAEL SACKETT,

Proposed Intervenor-Defendants.

**Civil Action No. 2:20-cv-01687-BHH**

**REPLY OF PROPOSED INTERVENOR-DEFENDANTS CHANTELL AND MICHAEL SACKETT IN SUPPORT OF MOTION TO INTERVENE**

Proposed Intervenor-Defendants Chantell and Michael Sackett ("the Sacketts") reply as follows to Plaintiffs' opposition to the Sacketts' motion to intervene. The Sacketts meet the requirements for intervention of right under Rule 24(a), and in the alternative permissive intervention under Rule 24(b). Plaintiffs' offer no compelling arguments in opposition.

# ARGUMENT

## I. The Sacketts Are Entitled to Intervention of Right Under Rule 24(a)

In their opposition to intervention, Plaintiffs concede—by failing to argue otherwise—that the Sacketts have a significant interest in this litigation, that disposition of this case plainly threatens to impair and impede these interests, and that the Agencies do not adequately represent the Sacketts' interests. ECF No. 137 at 3. Plaintiffs contend only that the Sacketts' motion is untimely, and that their interests are adequately represented by the Business Intervenors. *Id.* Plaintiffs' arguments are incorrect.

### A. The Sacketts' Motion to Intervene Is Timely

The Sacketts' motion to intervene is timely. It was filed within a month of the stay being lifted in this case, within two weeks of the Court ordering the merits rebriefed due to the change in administration, and almost a month before their brief as defendant-intervenors is due. Plaintiffs ignore the significant change of circumstances brought about by the Court's vacating the prior briefing and ordering a new briefing schedule, allowing the Agencies to change their position on the merits. Rule 24(a) does not "attempt to . . . specify rigid time limits" for intervention. *Scardelletti v. Debarr*, 265 F.3d 195, 202–03 (4th Cir. 2001) (quoting *United States v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)), *rev'd sub nom. on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002). The "[m]ere passage of time is but one factor to be considered in light of all the circumstances." *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (citing *Atkins v. State Bd. of Educ. of N.C.*, 418 F.2d 874 (4th Cir. 1969)).

Under all of the circumstances of this case, some of them quite unusual, intervention is timely. The case is once again in a preliminary posture since prior merits briefing has been vacated and the Agencies have changed their position. Plaintiffs offer no credible threat of injury to their

own interests from the Sacketts' intervention, while denial of intervention will significantly prejudice the Sacketts' interests.[1] *See* ECF No. 130 at 9–11. The Sacketts' meet each of the Fourth Circuit factors for assessing timeliness.

**1. The Sacketts Filed Their Motion to Intervene Prior to Any Substantive Progress in the Case**

No *substantive* progress had been made in this case prior to the Sacketts' intervention. All prior merits briefing was vacated on March 2, 2021, returning the case to a preliminary, pre-merits posture. ECF No. 106. On May 17, 2021, the Court entered a new scheduling order directing new merits briefing on a rapid schedule. ECF No. 118. The Sacketts moved to intervene within two weeks of that order. Rather than addressing the current state of the case on the merits, Plaintiffs overemphasize that the case was filed over one year ago, but "[m]ere passage of time is but one factor to be considered in light of all the circumstances." *Spring Constr. Co.*, 614 F.2d at 377. Here, because the Court vacated the prior merits briefing, no substantive progress has been made and the Sacketts may intervene without disturbing the current schedule for merits briefing.

Plaintiffs cite no relevant authority for their suggestion that this matter has progressed too far for the Sacketts to intervene. In *Alt*, summary judgment briefing had commenced, one dispositive motion had already been resolved, and several months of settlement negotiations had transpired. *See Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). In *Chamness*, the matter was already

[1] Indeed, Plaintiffs concede—by failing to argue otherwise—that the Sacketts have a significantly protectable interest that will be prejudiced in absence of their participation in this litigation. *See* ECF No. 137. Considering this concession, the Plaintiffs' timeliness arguments hold little weight. *Cf.* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1916 (3d ed. 1998) ("Since in situations in which intervention is of right the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely . . . ." (collecting cases)).

*submitted* and awaiting a ruling on summary judgment. *Chamness v. Bowen*, 722 F.3d 1110, 1122 (9th Cir. 2013). Neither set of circumstances is applicable to the present case.

### 2. The Sacketts' Participation Will Not Prejudice Plaintiffs

Plaintiffs make no credible claim of delay or prejudice resulting from the Sacketts' participation. *Scardelletti*, 265 F.3d at 202–03. Prejudice to existing parties is the most important consideration in deciding the timeliness of a motion to intervene of right; absence of prejudice thus leans heavily in favor of intervention. *See United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (prejudice to existing parties "the most important consideration in deciding whether a motion for intervention is untimely" (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1916 (1972))); *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970) (same).

The Sacketts moved to intervene almost a month before their brief as defendant-intervenors will be due, and agree to be bound by the schedule and page limits outlined in ECF No. 118. *See* ECF No. 130 at 10. Their participation will not delay the briefing or adjudication of this case in the ordinary course. Plaintiffs gamely argue that the Sacketts seek to "inject[]" new issues into the case and that they could not have "anticipated" the Sacketts' arguments prior to filing their opening brief on summary judgment. *See* ECF No. 137 at 7. But this is not prejudice to the Plaintiffs under the intervention standard. First, the Sacketts will defend the Rule on grounds supported by Supreme Court authority cited throughout Plaintiffs' complaint. *See* ECF No. 1 ¶¶ 12, 81, 82, 219, 232 (citing *Rapanos v. United States*, 547 U.S. 715 (2006)). Plaintiffs' own pleading identifies the *Rapanos* plurality opinion upon which the Sacketts rely. Plaintiffs have challenged final agency action, and the Sacketts now seek to raise legally valid arguments in defense of that agency action based on the *Rapanos* plurality, of which Plaintiffs are well apprised.

The fact that Plaintiffs cannot control the *precise* contours of the Sacketts' defense does not render that defense unanticipated.

Moreover, the appropriate place for Plaintiffs to *respond* to the Sacketts' merits arguments is not in their *opening* brief on summary judgment, but quite naturally on reply. They are the plaintiffs, the Sacketts seek party status on the defense side. Indeed, the fact that a party might be confronted with unanticipated arguments in response to its motion is precisely why the Local Civil Rules permit submission of a brief in reply to the response. *See* Local Civ. Rule 7.07 (permitting "a party desiring to reply to matters raised *initially in a response to a motion* or in accompanying supporting documents" to file a brief in reply) (emphasis added).[2]

Plaintiffs will not be prejudiced by the Sacketts' intervention.

**3. The Sacketts Have Provided Ample Reason for Moving to Intervene at This Stage of the Proceedings**

As the Sacketts explained in their motion to intervene, they moved to intervene promptly after learning of this Court's May 17, 2021, scheduling order. *See* ECF No. 130 at 9–11. With the immediate commencement of new merits briefing following the change of administration and new indications that the Agencies would change position and abandon defense of the rule, the Sacketts faced a new and urgent need for party status in this case. *Id*. Plaintiffs ignore that the stakes in this case have changed palpably in in the last thirty days. *See* ECF No. 137 at 5.[3]

---

[2] The Sacketts do not object to any reasonable expansion of the Plaintiffs' page limits on reply. Given the *Agencies* no longer intend to defend the Rule, *see infra* note 3, it is unlikely Plaintiffs will need additional time or pages to fully respond to the *Sacketts'* arguments.

[3] The Sacketts' need for party status is more urgent since they moved to intervene: the Agencies have now confirmed their intention to pursue a broader definition of "navigable waters" via a new rulemaking, and have asked the district court in another case to remand the Rule. *See* News Release, *EPA, Army Announce Intent to Revise Definition of WOTUS*, U.S. Envtl. Prot. Agency (June 9, 2021), https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-definition-wotus. *See also infra* note 4.

Plaintiffs make much of the Sacketts' defense of their interests in other cases challenging the Rule. *See* ECF No. 137 at 5. But this does not answer whether they have timely moved to intervene *in this case*. The Sacketts do not argue that they were previously unaware of this case. Instead, they argue that the vacation of the prior merits briefing and commencement of new merits briefing in this case, in light of the Agencies' internal review of the Rule and now their decision to abandon its defense, provide a new and urgent interest in the outcome of this case. *See* ECF No. 130 at 9–11. The Sacketts moved rapidly to intervene when that new sets of facts came to light: within a month of the stay in this case expiring, and two weeks of learning it would proceed to the merits with new briefing. *See* ECF No. 130. This is hardly "remain[ing] on the sidelines," a "strategic" delay, or "deliberate forbearance." ECF No. 137 at 6–7. The court in the only other challenge to the Rule in which the merits are being actively briefed has held that these changed circumstances render the Sacketts' recent intervention timely. *See* Order, *Pascua Yaqui Tribe v. EPA*, No. CV-20-00266-TUC-RM, ECF No. 70 (D. Ariz. May 14, 2021), ECF No. 70 (attached as Exhibit 8 to Plaintiffs' Opposition).

Finally, Plaintiffs cite three other cases they claim are "currently active and proceeding to the merits." ECF No. 137 at 7 n.4. But as a result of the court's deferral of the briefing schedule at the request of the Agencies, no merits briefing has occurred in *Conservation Law Foundation* since February 16, 2021.[4] *See* Minute Order Granting Motion to Modify Scheduling Order, *Conservation Law Found. v. EPA*, No. 1:20-cv-10820-DPW (D. Mass. Apr. 30, 2021), ECF No. 106; Plaintiffs' Combined Opposition to Cross-Motion for Summary Judgment and Reply in Support of Motion for Summary Judgment, *Conservation Law Found.*, No. 1:20-cv-10820-DPW

[4] And the Agencies have now sought remand without vacatur in lieu of filing a reply brief on the merits. Defendants' Motion for Voluntary Remand Without Vacatur, *Conservation Law Found. v. EPA*, No. 20-cv-10820-DPW (D. Mass. June 9, 2021), ECF No. 112.

(D. Mass. Feb 16, 2021), ECF No. 100. And in both *Colorado* and *Navajo Nation* the commencement or re-commencement of merits briefing has been delayed *three times* since the change in administration. *See* Minute Order Re Extension of Briefing Schedule, *Colorado v. EPA*, No. 1:20-cv-01461-WJM (D. Colo. June 10, 2021), ECF No. 109; Third Order Modifying Briefing Schedule, *Navajo Nation v. Regan*, No. 2:20-cv-00602-MV-GJF (D.N.M. May 19, 2021), ECF No. 31. The present case and *Pascua Yaqui* are the only cases in which the merits are being actively briefed by the parties following prior stays of litigation occasioned by the change of administration, the Agencies' announced review of the Rule, and recent decision to abandon its defense. Moreover, as Plaintiffs note, the Sacketts are parties to *Colorado* and *Conservation Law Foundation*, so in those cases, the Sacketts are adequately protected against the significant prejudice to their interests that would occur should merits briefing resume. *See* ECF No. 137 at 5–6 n.2. They will only be so protected here by this Court granting them intervention.

**B. The Business Intervenors Do Not Adequately Represent the Sacketts' Interests**

The Sacketts have met their "minimal" burden in showing that the existing parties "may" not adequately represent their interests. *United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *see also Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 515 (E.D. Va. 2007) ("There is good reason in most cases to suppose that the applicant is the best judge of the representation of his own interest and to be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties." (quoting 7C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1909 (2d ed. 1986))). Plaintiffs concede that the Agencies will not adequately represent the Sacketts' interests and fail to show that the Business Intervenors will.

**1. The Business Intervenors Do Not Share the Sacketts' Objectives in Defending the Navigable Waters Protection Rule**

The Sacketts' objectives in defending the Rule's definition of "adjacent wetlands" diverge significantly from those of the Business Intervenors, and the Business Intervenors therefore will not adequately represent their interests. The Business Intervenors—like the Agencies—have argued that although the Navigable Waters Protection Rule (including its definition of "adjacent wetlands") is "consistent" with the Clean Water Act, it is not compelled. *See* ECF No. 68-1 at 40–42 (arguing for *Chevron* deference). By defending the rule on these grounds, the Business Intervenors seek to uphold EPA's discretion to define and redefine "adjacent wetlands" ad infinitem. That discretion includes the flexibility to include a wider portfolio of wetlands, including those alleged to exist on the Sacketts' property. The risk this poses to the Sacketts' interests has increased dramatically since the Agencies announced their intention to revise or rescind the Rule and replace it with a broader definition of "adjacent wetlands." *See supra* note 2; *see also* Defendants' Memorandum of Law in Support of Motion for Voluntary Remand Without Vacatur, *Conservation Law Found. v. EPA*, No. 20-cv-10820-DPW (D. Mass. June 9, 2021), ECF No. 113. Far from being a mere difference in legal "strategy," *see* ECF No. 137 at 9, the Business Intervenors' rejection of the Sacketts' argument cuts to the heart of the Sacketts' objective in seeking intervention: a ruling that the current Rule's definition of "adjacent wetlands" is legally compelled, which will permanently preserve their ability to build on their vacant lot without the United States Army's permission. *See* ECF Nos. 130 at 11–13, 130-2 at 4.

Plaintiffs' authorities directly support the Sacketts' contention that by rejecting their arguments for upholding the Rule, the Business Intervenors will not adequately represent the Sacketts' interests. *See* ECF No. 137 at 9 (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006)); *see California ex rel. Lockyer*, 450 F.3d at 444 (finding inadequate

representation when, on summary judgment, the existing government party had already offered a different construction of the challenged provision to that of the proposed intervenors). But Plaintiffs also cite additional out-of-circuit authority for the unremarkable proposition that the "use of different arguments . . . is not inadequate representation *per se*." *See* ECF No. 137 at 9 (citing *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 112 (1st Cir. 1999)). The Sacketts do not argue that the rejection of their position by the Business Intervenors, *per se*, establishes a right to intervene. Rather, the Sacketts argue that the Business Intervenors' rejection of the Sacketts' argument is *against* the Sacketts' interests in the outcome of this litigation—their long-term ability to use their own property—and therefore that the Business Intervenors cannot adequately represent their interests. *See* ECF No. 130 at 17–18. This is sufficient to make the required "minimal" showing of inadequacy.

**2. The Sacketts' Offer a Meritorious Defense of the Navigable Waters Protection Rule**

Plaintiffs attempt to argue that the Sacketts' proposed defense of the Rule is "frivolous," and therefore excluded from the rule that inadequate representation exists where a proposed intervenor "demonstrate[s] a likelihood" that the existing parties "will abandon or concede a potentially meritorious reading of the statute." *California ex rel. Lockyer*, 450 F.3d at 444. *See* ECF No. 137 at 9. This argument fails on its face. The Sacketts argue—contrary to the Business Intervenors—that under Supreme Court precedent for interpreting fractured decisions, the *Rapanos* plurality is controlling and that it compels the Rule's redefinition of "adjacent wetlands." *See* ECF No. 130 at 13–16. This is a potentially meritorious argument, and not remotely frivolous.

*First*, there is no precedential Fourth Circuit decision on the question of which of the *Rapanos* opinions controls. This Court is free to adopt the *Rapanos* plurality as the holding of the case based on the Sacketts' arguments. The Fourth Circuit has applied Justice Kennedy's

concurrence in three cases, but has done so based merely on the agreement of the parties. In *Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, 633 F.3d 278, 288 (4th Cir. 2011), the Fourth Circuit applied Justice Kennedy's concurrence, because all parties agreed that it was the applicable test. When *Precon* returned to the Fourth Circuit following remand, that Court again applied the Kennedy concurrence in an unpublished opinion, based on the law of the case doctrine. *Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, 603 Fed. App'x 149, 150 & n.3 (4th Cir. 2015). Similarly, in *Deerfield Plantation Phase II-B Prop. Owners Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 501 Fed. App'x 268 (4th Cir. 2012), the parties agreed that if either test was satisfied, the features in question would be regulable. *Id*. at 273. None of these cases decides which *Rapanos* opinion is controlling, and two of the three are unpublished in any event.

The only Fourth Circuit decision to state that Justice Kennedy's concurrence is controlling was subsequently vacated by the Supreme Court, following its decision in *County of Maui*. *See Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 649 n.10 (4th Cir. 2018), *vacated and remanded*, 140 S. Ct. 2736 (2020). Moreover, *Upstate Forever* relied exclusively and without other analysis on a Ninth Circuit decision, *United States v. Robertson*, 875 F.3d 1281 (9th Cir. 2017), for the proposition that Justice Kennedy's concurrence controls. But the Supreme Court also vacated *Robertson*. 139 S. Ct. 1543 (2019). With both *Upstate Forever* and *Robertson* vacated by the Supreme Court, there are no Fourth Circuit precedential decisions on the question of which *Rapanos* opinion controls. As such, while the Sacketts will refrain from calling it frivolous, it is the Plaintiffs who have no basis whatsoever for their claim that the Sacketts' arguments addressing an open question of circuit precedent are "frivolous on their face." *See* ECF No. 10 at 5.

*Second*, in April 2020, the Supreme Court showed that it reads the *Rapanos* plurality as the controlling opinion. In *County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020), the Court

addressed the question of whether, under the Clean Water Act, the movement of a pollutant from an injection well (a point source) through groundwater (not a point source) to the ocean (a navigable water) is a regulated "discharge." *Id.* at 1468. The Supreme Court's application of *Rapanos* in *County of Maui* is determinative, and supersedes each of the six out-of-circuit cases cited by Plaintiffs for the proposition that the Sacketts' arguments lack merit. *See* ECF No. 130 at 10.

In *County of Maui*, the Supreme Court issued four separate opinions: a six-Justice majority opinion authored by Justice Breyer, *id*. at 1468–78, a concurrence by Justice Kavanaugh, *id*. at 1478–79 (Kavanaugh, J., concurring), and two separate dissents, one by Justice Thomas (joined by Justice Gorsuch), *id*. at 1479–82 (Thomas, J., dissenting), and one by Justice Alito, *id*. at 1482–92 (Alito, J., dissenting). All four opinions cite the *Rapanos* plurality, and all four opinions apply its discussion of point sources under the Act in evaluating whether pollutants moving through groundwater to the ocean constitute a regulable discharge. *See id.* at 1475 (citing *Rapanos*, 547 U.S. at 743) (stating that nothing in the Clean Water Act requires that a pollutant move "directly" or "immediately" from its origin to navigable waters); *id*. at 1478 (Kavanaugh, J., concurring) (concluding that the majority reading of "discharge" "adheres to the interpretation set forth in Justice Scalia's plurality opinion in *Rapanos*"); *id*. at 1482 (Thomas, J., dissenting) (concluding that the *Rapanos* plurality opinion does not decide the precise issue presented in *County of Maui*); *id*. at 1487 n.5 (Alito, J., dissenting) (concluding that the *Rapanos* plurality opinion supports "daisy chaining" point sources). Every Justice joined at least one of these opinions elaborating on the *Rapanos* plurality, with Justice Kavanaugh both joining the majority and writing separately on the role of the *Rapanos* plurality in the *County of Maui* decision.

While the four opinions disagreed about how the *Rapanos* plurality opinion applied to the issue in *County of Maui* (the definition of "discharge"), they all agreed that the plurality in the *Rapanos* opinion is what matters. None of the *County of Maui* opinions cited or relied on either the *Rapanos* concurrence or the dissent. Thus, when deciding the scope of the Act in *County of Maui*, every member of the Supreme Court looked only to the *Rapanos* plurality opinion.

This is consistent with and grows organically from the Supreme Court's prior citations to *Rapanos*. Before *County of Maui*, *Rapanos* was cited in opinions in nine Supreme Court cases. In *all* of those opinions, the author cited the *Rapanos* plurality opinion. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 706 (2006) (Scalia, J., dissenting); *Exxon Shipping v. Baker*, 554 U.S. 471, 508 n.21 (2008); *Kucana v. Holder*, 558 U.S 233, 253 (2010); *PPL Montana, LLC v. Montana*, 565 U.S. 576, 592 (2012); *Sackett v. EPA*, 566 U.S. 120, 123 (2012); *id*. at 133 (Alito, J., concurring); *Abramski v. United States*, 573 U.S. 169, 198 (2014) (Scalia, J., dissenting); *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 268 (2015); *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1811–12, 1815 (2016); *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 625, 633 (2018). By contrast, the Court has only cited Justice Kennedy's *Rapanos* concurrence once, in an opinion by Justice Kennedy—and even then the citation immediately followed a citation to the plurality opinion. *See PPL Montana*, 565 U.S at 592 (citing *Rapanos*, 547 U.S. at 730–31 and *id.* at 761 (Kennedy, J., concurring in judgment)). The Sacketts' research reveals no Supreme Court citation to the *Rapanos* dissent.

This pattern of adopting and relying on the *Rapanos* plurality opinion can be seen most clearly in the Supreme Court's post-*Rapanos* cases that address questions arising under the Clean Water Act. *See Sackett*, 566 U.S. at 123; *id*. at 133 (Alito, J., concurring); *Hawkes Co.*, 136 S. Ct. at 1811–12, 1815; *National Ass'n of Mfrs.*, 138 S. Ct. at 625, 633. And as noted above, this pattern

culminated in *County of Maui*, in which all four opinions debated how the *Rapanos* plurality opinion applies to the definition of "discharge." Notably, *none* of the Supreme Court's post-*Rapanos* Clean Water Act cases cite either Justice Kennedy's concurrence or the dissent.

The Supreme Court's consistent and clear adoption of the *Rapanos* plurality supersedes any out-of-circuit authority cited by Plaintiffs for the proposition that the Sacketts' arguments lack merit. *See* ECF No. 130 at 10.

### 3. In the Context of This Litigation the Business Intervenors Do Not Represent the Sacketts' Interests

Contrary to Plaintiffs' assertions, the Sacketts have certainly explained "*how, in the context of this litigation*," the Business Intervenors do not represent their interests. ECF No. 9 at 11. Again, the Business Intervenors are a group of national trade associations with broad interests in the application of the rule to their industry members. They seek for the Rule to be upheld on grounds that jeopardize the Sacketts' interests in the use and enjoyment of their property. *See* ECF No. 130 at 17–18. It is well established that where an existing party represents a broad range of interests (such as the Business Intervenors' interest in the national application of the Rule to over ten different industry sectors), a party with a more specific interest (e.g., the Sacketts' specific interest in their ability build a residence on their Idaho property) has the right to intervene. *See Cooper Techs., Co.*, 247 F.R.D. at 515 ("When a party to an existing suit must represent multiple and distinct interests, those multiple interests may dictate a different approach to the litigation, and a party representing one of those interests exclusively should be allowed to intervene." (citing *United Guar. Residential Ins.*, 819 F.2d at 475–76)); *Cf. In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (allowing intervention by an entity that "represent[s] only a subset of citizens" with specific concerns not shared by the existing government defendant).

Plaintiffs' selective quotation from *Stuart* is inapposite because the Sacketts' and the Agencies' interests are openly adverse. *See* ECF No. 137 at 11 (citing *Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013)). That quotation deals only with the standard to show "adversity of interest" where a court concludes that an existing *government* party shares the same objectives in the outcome of the litigation as the proposed intervenor. *See Stuart*, 706 F.3d at 351–53. But there is no application for *Stuart*'s heightened presumption (or any other presumption): The Business Intervenors are not a government party, and as discussed above they clearly do not share the Sacketts' objectives in defending the Rule. Indeed, the Sacketts' objectives in the outcome of this litigation are directly harmed by the Business Intervenors' arguments.

## II. In the Alternative, the Sacketts Satisfy the Standard for Permissive Intervention

Plaintiffs' arguments that the Sacketts do not alternatively qualify for permissive intervention fail for the same reasons. First, as established both in the Sacketts' motion to intervene and above in Section I.A of this reply, the Sacketts' motion to intervene is timely. *See* ECF No. 130 at 9–11. And Plaintiffs' only claim of prejudice is the questionable assertion that the Sacketts stepping in to defend the Rule where the Agencies will not will somehow harm Plaintiffs because they did not anticipate the precise contours of the Sacketts' legally supportable defense of the Rule. Second, as discussed above in Section II.B, Plaintiffs have no basis whatsoever for their assertion that the Sacketts' arguments addressing an open question of circuit precedent are "baseless." *See* ECF No. 130 at 12.

## III. Amici Curiae Participation Is Insufficient to Protect the Sacketts' Interests

Given the substantial risk of impairment of the Sacketts' interests should this case be decided in their absence and the clear lack of adequate representation of those interests by the existing parties, participation as amici curiae would be insufficient. As amici, the Sacketts would

have no right to formally raise issues and no right to appeal an adverse decision. Numerous courts have determined that amici status is insufficient to protect one's significant interests. *See United States v. City of Los Angeles*, 288 F.3d 391, 400 (9th Cir. 2002) ("[A]micus status is insufficient to protect the [applicant for intervention's] rights because such status does not allow the [applicant for intervention] to raise issues or arguments formally and gives it no right of appeal."); *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated on other grounds Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (rejecting appellees argument that amici status was sufficient because, as amici, the applicants for intervention would be unable to challenge the "propriety and scope" of an injunction). *McHenry* is inapposite, as the applicant there was denied intervention on the grounds that resolution would not practically impair its ability to protect its interests. *See McHenry v. Comm'r of Internal Revenue*, 677 F.3d 214, 226–27 (4th Cir. 2012). But here, Plaintiffs concede that the Sacketts' ability to protect their interests will be practically impaired by the outcome of this litigation. *See* ECF No. 137.

**CONCLUSION**

The Sacketts should be granted intervention of right or, in the alternative, should be granted permissive intervention.

DATED: June 15, 2021.

Respectfully submitted,

s/Christopher Mills
CHRISTOPHER MILLS
D.S.C. Bar No. 13432
Spero Law LLC
1050 Johnnie Dodds Blvd., #83
Mount Pleasant, SC 29465
Telephone: (843) 606-0640
Email: cmills@spero.law

ANTHONY L. FRANÇOIS*
CHARLES T. YATES*
Pacific Legal Foundation
930 G Street
Sacramento, CA 95814
Telephone: (916) 419-7111
Email: afrancois@pacificlegal.org
Email: cyates@pacificlegal.org

*Attorneys for Proposed Intervenor-Defendants Chantell and Michael Sackett*

* *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 15, 2021, I filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of South Carolina on all parties registered for CM/ECF in the above-captioned matter.

s/Christopher Mills
CHRISTOPHER MILLS