# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>) Case No. 2:20-cv-01687-BHH |
| MICHAEL REGAN,[1] in his official capacity as Administrator of the U.S. Environmental Protection Agency, *et al.*, | )<br>)<br>)<br>)<br>) |
| Defendants, | )<br>) |
| AMERICAN FARM BUREAU FEDERATION, *et al.*, | )<br>)<br>) |
| Intervenor-Defendants. | )<br>) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR

Pursuant to Local Rule 7.01, Defendants United States Environmental Protection Agency ("EPA"), EPA Administrator Michael Regan, United States Army Corps of Engineers, and Acting Assistant Secretary of the Army for Civil Works Jaime Pinkham[2] ("Defendants" or "Agencies") move the Court to remand the Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) (the "NWPR") to the Agencies and to dismiss this action. The Agencies respectfully submit this motion in lieu of

---

[1] EPA Administrator Michael Regan is automatically substituted for Andrew Wheeler pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Acting Assistant Secretary of the Army for Civil Works Jaime Pinkham is automatically substituted for R.D. James, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

filing a cross-motion for summary judgment/response to Plaintiffs' motion for summary judgment that is due today.[3]

As explained more fully herein, remand is appropriate because the Agencies have completed their review of the NWPR and have decided to commence a new rulemaking to revise or replace the rule. A remand would avoid potentially unnecessary litigation in this Court over aspects of the NWPR that will be reconsidered in a new rulemaking, would conserve the parties' limited resources, and would best serve the interest of judicial economy. In addition, remand would avoid requiring the Agencies to take positions on merits questions that might appear to pre-judge issues that will be reconsidered through notice-and-comment rulemaking. Through the Agencies' administrative rulemaking process, all members of the public, including the parties to this case, will have the opportunity to submit comments and recommendations, and the Agencies' new final rule therefore may resolve or moot some or all of the claims presented in this litigation. And, if a new rule does not resolve the parties' concerns, that new rule could itself be challenged. If a challenge occurs, the parties and reviewing courts would benefit from reviewing the Agencies' new final action and new administrative record, rather than continuing to litigate the NWPR on a record that may be rendered moot and out of date.

---

[3] While the Agencies' cross-motion for summary judgment/response to Plaintiffs' motion for summary judgment was initially due June 18, 2021 (ECF No. 118), the recent enactment of Juneteenth National Independence day rendered June 18, 2021 a federal holiday. *See* Juneteenth National Independence Day Act, Pub. L. No. 117-17, 135 Stat. 287 (2021). Accordingly, the Agencies' filing is now due June 21, 2021. *See* Fed. R. Civ. P. 6.

The Agencies have conferred with the parties regarding this motion pursuant to Local Rule 7.02. Plaintiffs have indicated they intend to oppose the motion.[4] Defendant-Intervenors have stated they do not intend to oppose the motion.[5]

## BACKGROUND

A.   **Statutory and Regulatory Overview**

The Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), seeks "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1251–1388. Among other provisions, the CWA prohibits "the discharge of any pollutant by any person" without a permit or other authorization, 33 U.S.C. § 1311(a), to "navigable waters," defined as "the waters of the United States," *id*. at § 1362(7).

The Army Corps of Engineers first promulgated regulations defining "waters of the United States" in the 1970s. Covered waters included only those waters subject to the ebb and flow of the tide or used "for purposes of interstate or foreign commerce." 39 Fed. Reg. 12,115,

---

[4] Plaintiffs consist of the following organizations: American Rivers, Charleston Waterkeeper, Chattahoochee Riverkeeper, Clean Water Action, Defenders of Wildlife, Environment America, Friends of the Rappahannock, James River Association, National Wildlife Federation, North Carolina Coastal Federation, North Carolina Wildlife Federation, Public Employees for Environmental Responsibility, Roanoke River Basin Association, and South Carolina Coastal Conservation League.

[5] Defendant-Intervenors consist of the following organizations: American Farm Bureau Federation, American Petroleum Institute, American Road and Transportation Builders Association, Chamber of Commerce of the United States of America, Leading Builders of America, National Alliance of Forest Owners, National Association of Home Builders, National Cattlemen's Beef Association, National Corn Growers Association, National Mining Association, National Pork Producers Council, National Stone, Sand, and Gravel Association, North Carolina Farm Bureau, Public Lands Council, South Carolina Farm Bureau, U.S. Poultry & Egg Association. On February 2, 2021, Edison Electric Institute was voluntarily dismissed as a defendant-intervenor. ECF No. 103. Separately, on May 28, 2021, Michael and Chantell Sackett moved to intervene in this proceeding. ECF No. 130. The Court has not yet ruled on this motion.

12,119 (Apr. 3, 1974). Thereafter, the Corps broadened its interpretation of the phrase. *See, e.g.*, 42 Fed. Reg. 37,122, 37,144 (July 19, 1977). In the 1980s, the Agencies adopted regulatory definitions substantially similar to the 1977 definition; those regulations remained in effect until 2015. *See* 33 C.F.R. § 328.3(a) (1987) (Corps); 40 C.F.R. § 232.2(q) (1988) (EPA) (collectively, the "1986 Regulations"). Over time, the Agencies refined their application of the 1986 Regulations, as informed by three Supreme Court decisions. *See, e.g.*, *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985); *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001); *Rapanos v. United States*, 547 U.S. 715 (2006).

In 2015, the Agencies revised the regulatory definition of "waters of the United States." Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) (the "2015 rule"). In 2019, the Agencies repealed the 2015 rule and reinstated the prior regulatory framework. 84 Fed. Reg. 56,626 (Oct. 22, 2019). Then, in 2020, the Agencies again revised the definition of "waters of the United States" with the NWPR.

**B.     The NWPR**

The NWPR establishes four categories of jurisdictional waters: "(1) The territorial seas and traditional navigable waters; (2) tributaries of such waters; (3) certain lakes, ponds, and impoundments of jurisdictional waters; and (4) wetlands adjacent to other jurisdictional waters (other than waters that are themselves wetlands)." 40 C.F.R. § 120.2 (EPA); 33 C.F.R. § 328.3 (Corps); *see also* 85 Fed. Reg. at 22,273. The NWPR also establishes exclusions and defines the operative terms used in the regulatory text. 85 Fed. Reg. at 22,270; *see also id*. at 22,340–41 (regulatory text). The NWPR includes "perennial" tributaries that "flow[] continuously year-round" and "intermittent" tributaries that "flow[] continuously during certain times of the year and more than in direct response to precipitation (*e.g.*, seasonally when the groundwater table is

4

elevated or when snowpack melts)." *Id*. at 22,275. Ephemeral waters (waters that flow in direct response to precipitation) are categorically excluded from jurisdiction under the NWPR. *Id*. at 22,340.

The NWPR also includes "adjacent wetlands" as subject to CWA jurisdiction if they directly abut a jurisdictional water, are "inundated by flooding" from a jurisdictional water during "a typical year," are separated from a jurisdictional water "only by a natural berm, bank, dune, or similar natural feature," or are separated from a jurisdictional water "only by an artificial dike, barrier, or similar artificial structure so long as that structure allows for a direct hydrologic surface connection" between the wetlands and the jurisdictional water in a "typical year." *Id*. at 22,251. Multiple parties have challenged the NWPR in various district courts.[6]

**C.    This Litigation**

On April 29, 2020, Plaintiffs initiated this lawsuit pursuant to the Administrative Procedure Act challenging the NWPR. ECF No. 1. Plaintiffs generally allege that the NWPR violates the APA for a number of reasons including, among other things, that the Agencies failed to adequately consider water quality impacts and that the NWPR's exclusion of ephemeral

---

[6] *See Conservation Law Found. v. EPA*, No. 1:20-cv-10820-DPW, ECF No. 1 (D. Mass. Apr. 29, 2020); *California v. Wheeler*, No. 3:20-cv-03005-RS, ECF No. 1 (N.D. Cal. May 1, 2020); *Chesapeake Bay Found., Inc. v. Wheeler*, 1:20-cv-01064-RDB, ECF No. 1 (D. Md. Apr. 27, 2020); *N.M. Cattle Growers' Ass'n v. EPA*, 1:19-cv-00988-JHR-SCY, ECF No. 26 (D.N.M. Apr. 27, 2020); *Or. Cattlemen's Ass'n v. EPA*, 3:19-cv-00564-MM, ECF No. 90 (D. Or. May 1, 2020); *Wash. Cattlemen's Ass'n v. EPA*, 2:19-cv-00569-JCC, ECF No. 72 (W.D. Wash. May 4, 2020); *Murray v. Wheeler*, 1:19-cv-01498-LEK, ECF No. 17 (N.D.N.Y. May 11, 2020); *Colorado v. EPA*, 1:20-cv-01461-WJM, ECF No. 1 (D. Colo. May 22, 2020); *Pasqua Yaqui Tribe v. EPA*, 4:20-cv-00266-RM, ECF No. 1 (D. Ariz. June 22, 2020); *Navajo Nation v. Wheeler*, 2:20-cv-00602-MV-GJF, ECF No. 1 (D.N.M. June 22, 2020); *Puget Soundkeeper All. v. EPA*, 2:20-cv-00950-JCC, ECF No. 1 (W.D. Wash. June 22, 2020); *Env't Integrity Project v. EPA*, 1:20-cv-01734-KBJ, ECF No. 1 (D.D.C. June 25, 2020); *Waterkeeper All. v. Wheeler*, No. 3:18-cv-03521-RS, ECF No. 93 (N.D. Cal. Dec. 23, 2020); *Pueblo of Laguna v. Regan*, No. 21-cv-00277-JFR-KK, ECF No. 1 (D.N.M. Mar. 26, 2021).

5

streams and certain wetlands is arbitrary and capricious. *See generally id*. Defendant-Intervenors were granted the right to intervene in this proceeding on June 11, 2020. ECF No. 29. The Parties subsequently filed cross-motions for summary judgment, completing their briefing on October 19, 2021. *See* ECF Nos. 58, 68-70, 73, 80-81. A hearing regarding the completed briefing was scheduled for December 1, 2020, but was cancelled and rescheduled for February 4, 2021. ECF Nos. 74, 82, 86.

On January 20, 2021, President Biden issued an Executive Order entitled "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis." 86 Fed. Reg. 7037 (Jan. 25, 2021) ("EO 13990"). In conformance with the Executive Order, the Agencies began reviewing a number of regulations promulgated in the last four years, including the NWPR at issue in this case. In light of this directive, the Parties filed a joint motion to continue the February 4, 2021 hearing date by at least 30 days. ECF No. 95. The Court granted the motion on January 27, 2021, stating that it would reschedule the hearing for some time after March 4, 2021. ECF No. 96. On March 1, 2021, the Agencies filed a motion to stay the proceeding an additional 60 days. ECF No. 105. On March 2, 2021, the Court granted the Agencies' motion, staying the case until May 1, 2021. ECF No. 106. The Court also dismissed the filed cross-motions for summary judgment, allowing the Parties to re-file their motions at a later date. *Id.* On May 21, 2021, Plaintiffs filed their motion for summary judgment. ECF No. 119. The Agencies' cross-motion for summary judgment/opposition brief is due June 18, 2021. *See* ECF No. 118. The Agencies hereby file this motion for remand without vacatur in lieu of a cross-motion for summary judgment/opposition brief.

### D. The Agencies' Review of the NWPR and Decision to Initiate New Rulemaking

The Agencies promulgated the NWPR to define the phrase "waters of the United States," which appears in Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7). On January 20, 2021, following the presidential transition, President Biden issued EO 13990. In relevant part, EO 13990 states that it is the policy of the new administration

> to listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

*Id*. at 7037. EO 13990 directs federal agencies to "immediately review and, as appropriate and consistent with applicable law, take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with these important national objectives, and to immediately commence work to confront the climate crisis." *Id*.

Over the past few months, the Agencies have been reviewing the NWPR pursuant to EO 13990. As explained in the attached declarations, the Agencies have now reviewed the NWPR and have decided to initiate new rulemaking to define "waters of the United States." Ex. 1, Declaration of Radhika Fox ("Fox Decl.") ¶¶ 8–10; Ex. 2, Declaration of Jaime Pinkham ("Pinkham Decl.") ¶¶ 7–9.[7]

---

[7] The declarations of Radhika Fox and Jaime Pinkham were filed as exhibits in support of the Agencies' motion to remand the NWPR without vacatur filed on June 9, 2021 in *Conservation Law Found. v. EPA*, No. 1:20-cv-10820-DPW, Dkt. Nos. 113-1 and 113-2 (D. Mass. June 9, 2021). They are attached hereto as Exs. 1 and 2.

## STANDARD OF REVIEW

Agencies have inherent authority to reconsider past decisions and to revise, replace, or repeal a decision to the extent permitted by law and supported by a reasoned explanation. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). Further, an agency's interpretation of a statute it administers is not "carved in stone" but must be evaluated "on a continuing basis," for example, "in response to . . . a change in administrations." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (internal quotation marks and citations omitted). Voluntary remand is proper where an agency requests a "remand 'without confessing error, [in order] to reconsider its previous position.'" *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 215 (4th Cir. 2009) (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). "This furthers the policy of allowing an agency to assess 'the wisdom of its policy on a continuing basis.'" *S.C. Wildlife Fed'n v. Limehouse*, No. C/A 2:06-CV-2528-DCN, 2009 WL 2244210, at *5 (D.S.C. July 27, 2009) (quoting *SKF*, 254 F.3d at 1028). In other words, remand should be granted so long as "the agency intends to take further action with respect to the original agency decision on review." *Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017).

"Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (granting remand and citing *SKF USA Inc.*, 254 F.3d at 1029); *see also Limnia, Inc.*, 857 F.3d at 386–87 (refusing remand where agency had no intention to revisit challenged decision).

Voluntary remand is appropriate when the request is reasonable and timely. *See Macktal v. Chao*, 286 F.3d 822, 826 (5th Cir. 2002); *see also Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116,

1122 (10th Cir. 2009) (granting EPA's motion for voluntary remand). In exercising its discretion to grant remand, a court may consider whether any party opposing remand would be unduly prejudiced. *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015).

## ARGUMENT

Remand is proper in this case because the Agencies have completed their review of the NWPR and have decided to initiate new rulemaking to define "waters of the United States." Fox Decl. ¶¶ 7–9; Pinkham Decl. ¶¶ 8–10. Remand would also conserve judicial resources and would not unduly prejudice the parties.

### I. The Agencies Have Established Grounds for Voluntary Remand.

An agency may seek remand because it wishes to revisit its interpretation of the governing statute, the procedures it followed in reaching its decision, or the decision's relationship to other agency policies. *SKF USA Inc.*, 254 F.3d at 1028–29. The Agencies seek remand for these exact reasons. The Agencies conducted a review of the NWPR. Fox Decl. ¶ 10; Pinkham Decl. ¶ 10. Through that review, the Agencies "have identified substantial concerns with the NWPR and have determined that additional consideration should be given to certain aspects of the NWPR through notice-and-comment rulemaking[.]" *Id.*

Voluntary remand is appropriate because the Agencies have identified "substantial and legitimate" concerns with the NWPR and intend to embark upon a rulemaking process to replace the rule. *SKF USA Inc.*, 254 F.3d at 1029 ("[I]f the agency's concern [with the challenged action] is substantial and legitimate, a remand is usually appropriate."). The Agencies have explained that they have substantial concerns about certain aspects of the NWPR and the effects of the NWPR on the nation's waters, including whether the NWPR adequately considered the CWA's statutory objective in determining the scope of "waters of the United States" and, as a result,

whether the process adequately considered the effects of the NWPR on the integrity of the nation's waters. Fox Decl. ¶¶ 10, 12; Pinkham Decl. ¶¶ 10, 12. For example, the Agencies have identified concerns about whether sufficient consideration was given to the impact of the NWPR's categorical exclusion of ephemeral waters. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14. In addition, the Agencies have noted on-the-ground effects of the NWPR since the rule went into effect, which reinforces their conclusion that a new rulemaking in which the agencies will reconsider issues of concern with the NWPR and its impacts is warranted. Fox Decl. ¶¶ 15–20; Pinkham Decl. ¶¶ 15–20.

Remand would give the Agencies an opportunity to fully explore and address these issues and the concerns of the parties and other stakeholders, through the administrative rulemaking process. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14. Remand would also allow the Agencies to develop a new administrative record, which would benefit the Court and the parties if a new rule were to be litigated. "[T]his kind of reevaluation is well within an agency's discretion," *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (citing *Fox Television Stations, Inc.*, 556 U.S. at 514–15), and courts should allow it. *See Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018).

Moreover, deferring to the Agencies' new rulemaking process also promotes important jurisprudential interests. "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386–87 (D.C. Cir. 2012) (citation omitted). Allowing the administrative process to run its course here will let the Agencies "crystalliz[e] [their] policy

before that policy is subjected to judicial review," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999), and avoid "inefficient" and unnecessary "piecemeal review." *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 30 (D.C. Cir. 1984) (citation and internal quotation marks omitted).

Courts have granted remand in similar situations. In *SKF USA Inc.*, the Federal Circuit found a remand to the Department of Commerce appropriate in light of the agency's change in policy. 254 F.3d at 1025, 1030. Likewise, in *FBME Bank Ltd.*, the District Court for the District of Columbia remanded a rule to the Department of the Treasury to allow the agency to address "serious 'procedural concerns,'" including "potential inadequacies in the notice-and-comment process as well as [the agency's] seeming failure to consider significant, obvious, and viable alternatives." 142 F. Supp. 3d at 73.

The Agencies are not requesting vacatur of the NWPR during the remand. Courts have the discretion to remand an agency decision without vacatur. *Friends of Park v. Nat'l Park Serv.*, No. 2:13-CV-03453-DCN, 2014 WL 6969680, at *3 (D.S.C. Dec. 9, 2014). Factors a court can consider include the seriousness of the rule's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of granting vacatur when that interim change may itself be changed. *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990). In light of the Agencies' stated intent to address their substantial concerns with the NWPR through a new rulemaking, the Agencies request that the Court order a remand and are not including a request for vacatur.

## II. Granting Remand Conserves Judicial Resources.

Granting remand here promotes judicial economy and conserves the parties' and the courts' resources. Courts "have recognized that '[a]dministrative reconsideration is a more

expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts.'" *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Commonwealth of Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978)). Indeed, "[v]oluntary remand is [] important for judicial economy because it allows courts to preserve judicial resources." *Friends of Park*, 2014 WL 6969680, at *2 (citing *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). Allowing the Agencies to proceed with a new rulemaking allows them to address concerns with the NWPR through the administrative process. The Agencies might resolve the parties' concerns through that process, potentially rendering unnecessary future litigation that could strain the courts' and parties' resources. Remand would preserve those resources.

In addition, continuing to litigate this case wastes the Agencies' and the parties' resources in the present, resources that could be better spent on the rulemaking process. Because many of the issues presently before the Court will be re-evaluated in the Agencies' new rulemaking, remand to the Agencies will allow the Agencies to focus their resources on the new rulemaking, with input from the parties and other interested stakeholders. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14. In particular, ongoing litigation could interfere with the Agencies' rulemaking, as the Agencies would have to prioritize pending litigation deadlines. *See Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013) (because agency did "not wish to defend" the action, "forcing it to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the rule's deficiencies.").

Moreover, given that merits briefing is not complete and only Plaintiffs have filed an opening motion for summary judgment (ECF No. 119), remand would save judicial resources

and render further briefing unnecessary.[8, 9] The Agencies' new rulemaking may fully address and resolve the parties' concerns or, at least, narrow the issues if the parties were to challenge a new rule arising out of the new rulemaking. Even if remand does not resolve all of the claims presented by the parties, subsequent judicial review will likely turn on a new and different record that will necessarily alter the nature of this Court's review. Therefore, continuing to litigate the very same issues that the Agencies may resolve through a new rulemaking, "would be inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a waste of judicial resources.

**III.    Remand Would Not Prejudice the Parties.**

Remand would not prejudice any party. The Agencies intend to consider and evaluate issues raised in the various legal challenges to the NWPR during the rulemaking process, including arguments made by the parties in this case. Fox Decl. ¶¶ 8–10; Pinkham Decl. ¶¶ 8–10. As addressed above, the Agencies may revise or replace the NWPR in a way that resolves Plaintiffs' claims. For example, Plaintiffs claim that the Agencies did not adequately consider the CWA's statutory objective and arbitrarily excluded ephemeral waters and certain wetlands. Pls.' Mem. of Law at 19-23 and 30-37, ECF No. 119-1. The Agencies intend to consider these very issues on remand. Fox Decl. ¶ 13; Pinkham Decl. ¶ 13. Through their rulemaking process, the Agencies will consider the policies set forth in EO 13990 and intend to ensure that "waters of the United States" is defined in a manner consistent with the CWA's statutory objective. In addition,

---

[8] The Court vacated and dismissed without prejudice the Parties' completed cross-motions for summary judgment briefing, but allowed the Parties to re-file their motions at a later date. ECF No. 106.

[9] Various amicus parties have also been granted leave to file their proposed briefs in support of Plaintiffs' motion for summary judgment. *See* ECF Nos. 121, 134.

the parties will have the opportunity to participate through the notice and comment process by submitting comments on any new proposed rule. Fox Decl. ¶ 10; Pinkham Decl. ¶ 10.

## CONCLUSION

The Agencies have identified numerous concerns with the NWPR, many of which have been raised by Plaintiffs in this case, and intend to evaluate those concerns through a new notice-and-comment rulemaking. Fox Decl. ¶¶ 9–20; Pinkham Decl. ¶¶ 9–20. Where, as here, the Agencies have committed to reconsidering the challenged action, the proper course is remand to allow the Agencies to address their concerns through the administrative process. The Agencies respectfully ask the Court to remand the NWPR, without vacatur, and to dismiss this case, rather than requiring the Agencies to litigate a rule that may be replaced.

Respectfully submitted,

June 21, 2021

M. RHETT DEHART

*Acting United States Attorney*
District of South Carolina

s/ *Lee Berlinsky*

LEE BERLINSKY
Fed. ID# 05443
*Assistant United States Attorney*
151 Meeting Street, Suite 200
Charleston, SC 29401
Telephone: (843) 266-1679
Lee.Berlinsky@usdoj.gov

s/ *Hubert T. Lee*

HUBERT T. LEE
*Trial Attorney*
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 514-1806 (Lee)
Hubert.lee@usdoj.gov