**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, et al., | |
| Plaintiffs, | |
| v. | **Civil Action No. 2:20-cv-01687-BHH** |
| MICHAEL REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency, et al., | |
| Defendants, | |
| and | |
| AMERICAN FARM BUREAU FEDERATION, et al., | |
| Intervenor-Defendants, | |
| and | |
| CHANTELL SACKETT and MICHAEL SACKETT, | |
| Proposed Intervenor-Defendants. | |

**[PROPOSED] INTERVENOR-DEFENDANTS
THE SACKETTS' [PROPOSED] OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR REMAND**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

STATEMENT OF THE CASE...................................................................................... 2

I.    The Clean Water Act, the *Rapanos* Decision, and the Agencies' Historic Failure to Define "Navigable Waters" ............................................................................... 2

II.   The Navigable Waters Protection Rule and the Exclusion of Non-Abutting Wetlands from Federal Authority ........................................................................ 4

III.  Commencement of This Lawsuit ..................................................................... 4

IV.  The Agencies' Decision to Rewrite Their Definition of "Navigable Waters" Yet Again.. 5

ARGUMENT ............................................................................................................... 6

I.    The Clean Water Act Only Regulates Wetlands That Directly Abut Other Regulable Water Bodies ..................................................................................... 7

    A.    The Act's text limits "navigable waters" to navigable-in-fact waterways ............. 7

    B.    The Constitution requires a narrow reading of "navigable waters"...................... 10

        1.    The Commerce Clause and Tenth Amendment limit agency regulation of non-abutting wetlands.......................................................................... 11

        2.    The non-delegation doctrine also limits agency regulation of non-abutting wetlands ................................................................................ 12

II.   Under the Controlling Plurality Opinion in *Rapanos*, the Rule's Definition of "Adjacent Wetlands" Is Required ................................................................... 13

    A.    In *Rapanos*, a divided Supreme Court limited the Clean Water Act's application to wetlands ...................................................................... 14

    B.    The Supreme Court has adopted the *Rapanos* plurality as the controlling opinion, as shown most recently in *County of Maui*............................................ 15

    C.    *County of Maui* supersedes Fourth Circuit decisions discussing *Rapanos*........... 17

    D.    Under *Marks v. United States*, the plurality opinion is the holding of *Rapanos* .. 19

        1.    The controlling opinion is the one that is a "logical subset" of the other ...................................................................................... 19

        2.    The *Rapanos* plurality opinion is a "logical subset" of the concurrence as to the definition of "navigable waters"................................................. 21

III.  Plaintiffs' APA-Based Claims Are Unavailing Because Procedural Deficiencies Cannot Provide Grounds to Reverse a Non-Discretionary Agency Decision............................. 24

IV.    The Agencies' Motion for Remand Should Be Denied .................................................. 27

    A.    This Court possesses wide discretion to adjudicate the merits of the "adjacent wetlands" provisions ........................................................................................ 28

    B.    The Court *need not* remand the entire rule in response to the Agencies' motion ............................................................................................................ 30

    C.    The Court *should* deny the Agencies' motion for remand as to the "adjacent wetlands" provisions of the Rule ......................................................... 32

V.    The Sacketts Have Standing to Defend the Rule ........................................................... 37

VI.    The Sacketts Reserve the Right to File an Opposing Brief to Any Additional Relief Sought by Plaintiffs ................................................................................................. 39

CONCLUSION .............................................................................................................. 39

CERTIFICATE OF SERVICE ...................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases</u>**

*A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) .........................................12

*A.T. Massey Coal Co., Inc. v. Massanari*, 305 F.3d 226 (4th Cir. 2002) ....................................19

*Abramski v. United States*, 573 U.S. 169 (2014) ...............................................................16

*Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015) ........................................16

*Am. Paper Inst. v. U.S. E.P.A.*, 660 F.2d 954 (4th Cir. 1981) ...............................................29–30

*Am. Petroleum Inst. v. EPA*, 683 F.3d 382 (D.C. Cir. 2012)....................................................35

*Ark. AFL-CIO v. Fed. Commc'ns Comm'n*, 11 F.3d 1430 (8th Cir. 1993) .................................26

*Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v. Norton*,
527 F. Supp. 2d 130 (D.D.C. 2007)....................................................................................28, 33

*Brown & Williamson Tobacco Corp. v. U.S. Food & Drug Admin.*,
153 F.3d 155 (4th Cir. 1998) ............................................................................................30, 33

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)..............................................................................................5, 29–30, 33

*County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020) ......................................... 15-18

*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*,
788 F.3d 312 (D.C. Cir. 2015).........................................................................................37–38

*Crowell v. Benson*, 285 U.S. 22 (1932) .............................................................................10

*The Daniel Ball*, 77 U.S. 557 (1870) ....................................................................................7

*Deerfield Plantation Phase II-B Prop. Owners Ass'n v. U.S. Army Corps of Eng'rs*,
501 Fed. App'x 268 (4th Cir. 2012) ......................................................................................17

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891 (2020) .............................27

*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) .................................................................37

*Exxon Shipping v. Baker*, 554 U.S. 471 (2008) .....................................................................16

*Friends of Park v. Nat'l Park Serv.*,
No. 2:13-CV-03453-DCN, 2014 WL 6969680 (D.S.C. Dec. 9, 2014) ....................................28

*George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532 (D.C. Cir. 1992)..........................25, 34, 36

*Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019) .......................................................3

*Gregg v. Georgia*, 428 U.S. 153 (1976) ...............................................................................19

*Gundy v. United States*, 139 S. Ct. 2116 (2019) ....................................................................12

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ...........................................................................16

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) .......................................................................10

*Kang v. Attorney General*, 611 F.3d 157 (3d Cir. 2010) .................................................................25

*King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991)..........................................................................19

*Koyo Seiko Co. v. United States*, 95 F.3d 1094 (Fed. Cir. 1996)..................................................26

*Kucana v. Holder*, 558 U.S 233 (2010) ..........................................................................................16

*Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379 (D.C. Cir. 2017) ...................................28–30

*Lutheran Church-Missouri Synod v. Fed. Comm. Comm'n*,
141 F.3d 344 (D.C. Cir. 1998)...............................................................................................28, 36

*Marks v. United States*, 430 U.S. 188 (1977) ................................................................18–20, 23

*Memoirs v. Massachusetts*, 383 U.S. 413 (1966) .........................................................................20

*Miss. River Transmission Corp. v. FERC*, 969 F.2d 1215 (D.C. Cir. 1992) ...............................29

*N.C. Comm'n of Indian Affairs v. U.S. Dep't of Labor*,
725 F.2d 238 (4th Cir. 1984), *cert. denied*, 469 U.S. 828 (1984)...........................................26

*National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617 (2018) ...............................16

*NTN Bearing Corp. of Am. v. United States*, 46 F. Supp. 3d 1375 (Ct. Int'l Trade 2015) ......29–30

*Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935) ...................................................................12

*Paul v. United States*, 140 S. Ct. 342 (2019) ..............................................................................12

*PPL Montana, LLC v. Montana*, 565 U.S. 576 (2012)................................................................16

*Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, 633 F.3d 278 (4th Cir. 2011) ......................17

*Precon Dev. Corp v. U.S. Army Corps of Eng'rs*, 603 Fed. App'x 149 (4th Cir. 2015) .............17

*Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*,
740 F.2d 21 (D.C. Cir. 1984) .....................................................................................................35

*Railway Labor Execs.' Ass'n v. Interstate Commerce Comm'n*,
784 F.2d 959 (9th Cir. 1986) .....................................................................................................26

*Rapanos v. United States*, 547 U.S. 715 (2006)................................................................... *passim*

*S.C. Wildlife Fed'n v. Limehouse*,
No. C/A 2:06-CV-2528-DCN, 2009 WL 2244210 (D.S.C. July 27, 2009) ...........................28

*Sackett v. EPA*, 566 U.S. 120 (2012) ...........................................................................................16

*Securities and Exchange Comm'n v. Chenery Corp.*,
332 U.S. 194 (1947)........................................................................................................25–26, 34

*SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001)...........................................29, 33

*Social Sec. Bd. v. Nierotko*, 327 U.S. 358 (1946) .................................................................30, 33

*Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159 (2001)..........8–9, 11

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807 (2016) ....................................16

*Union Pacific R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885 (8th Cir. 2013) .........25, 34

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*,
No. C-09-4029 EMC, 2011 WL 3607790 (N.D. Cal. Aug. 16, 2011)..............29–30

*United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985).......................9–10, 22–23

*United States v. Robertson*, 875 F.3d 1281 (9th Cir. 2017).........................................18

*Upstate Forever v. Kinder Morgan Energy Partners, L.P.*,
887 F.3d 637 (4th Cir. 2018), *vacated and remanded*, 140 S. Ct. 2736 (2020) ....................18

*Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43 (D.C. Cir. 1999) ................................35

*Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) ..........................................................25

## Statutes

33 U.S.C. § 1251 ........................................................................................2, 8, 11

33 U.S.C. §§ 1311(a), 1362(12)...............................................................................2

33 U.S.C. § 1362(7) ..........................................................................................2, 8

33 U.S.C. § 1362(12) .........................................................................................2

Pub. L. No. 74-738, 49 Stat. 1570 (June 22, 1936) .........................................................8

## Regulations

33 C.F.R. § 328.3 (1987) ..............................................................................2–4, 30–31, 37

40 C.F.R. § 120.2 .............................................................................................4

## Miscellaneous

80 Fed. Reg. 37,054 (June 29, 2015) ........................................................................3

84 Fed. Reg. 56,626 (Oct. 22, 2019)........................................................................3

85 Fed. Reg. 22,250 (Apr. 21, 2020) ........................................................................4

*EPA, Army Announce Intent to Revise Definition of WOTUS*, EPA News Releases
(June 9, 2021), https://www.epa.gov/newsreleases/epa-army-announce-intent-
revise-definition-wotus .....................................................................................5

Fine, Toni M., *Agency Requests for "Voluntary" Remand: A Proposal for the
Development of Judicial Standards*, 28 Ariz. St. L.J. 1079 (1996) .........................................36

Stack, Kevin M., *The Constitutional Foundations of Chenery*, 2007 Yale L.J. 952 ....................24

Parish, Gary E. & Morgan, J. Michael, *History, Practice and Emerging Problems
of Wetlands Regulation: Reconsidering Section 404 of the Clean Water Act*,
17 Land & Water L. Rev. 43 (1982) .........................................................................11

Revesz, Joshua, *Voluntary Remands: A Critical Reassessment*,
70 Admin. L. Rev. 361 (2018) ..............................................................................36

# INTRODUCTION

[Proposed] Intervenor-Defendants Chantell and Michael Sackett (the Sacketts) oppose Plaintiffs South Carolina Coastal Conservation League, *et al.*'s (Plaintiffs) motion for summary judgment, ECF No. 119, to the extent that it challenges the definition of "adjacent wetlands" in the Navigable Waters Protection Rule (Rule). The Sacketts, whose motion to intervene is pending, respectfully file this brief in proposed form in anticipation of the Court's favorable ruling on their motion. *See* ECF No. 130.

The controversy in this case centers on the United States Environmental Protection Agency (EPA) and the United States Army's (together the "Agencies") decades-long attempt to define "navigable waters" within the meaning of the Clean Water Act. Plaintiffs' case rests on the claim that the Agencies engaged in discretionary decision making when they adopted the Rule and that they abused their discretion in so acting. This is incorrect as to the Rule's definition of "adjacent wetlands." A plain reading of the text of the Clean Water Act, as authoritatively interpreted by the Supreme Court, precludes the Agencies from regulating wetlands that do not directly abut other regulable water bodies. The Agencies have no discretion to extend their regulations beyond that limit, and so their decision not to include most non-abutting wetlands was compelled by statute and was not a discretionary decision. Plaintiffs' claims as the Rule's definition of "adjacent wetlands" must therefore fail.

The Sacketts also oppose the Agencies' motion for voluntary remand, ECF No. 140, to the extent it seeks remand of the "adjacent wetlands" provisions of the Rule. As with Plaintiffs' merits arguments, the Agencies' motion treats the Rule as an exercise of agency discretion, entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, and *National Cable & Telecommunications Association v. Brand X Internet Services*. By asking that the Rule

be remanded to them, the Agencies ask this Court to affirm their claimed discretion to revise the definition of "navigable waters." But the Agencies have no such discretion as to the Rule's exclusion of non-abutting wetlands. The Rule's "adjacent wetlands" definition therefore cannot be revised outward by the Agencies on remand. This Court should deny remand of the Rule's "adjacent wetlands" definition and determine the pure question of statutory construction presented on the merits.[1]

## STATEMENT OF THE CASE

### I. The Clean Water Act, the *Rapanos* Decision, and the Agencies' Historic Failure to Define "Navigable Waters"

This case centers on EPA and the Army's decades-long attempt to define the Clean Water Act term "navigable waters" without violating the statute or the Constitution. That Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8).

Despite the need for a durable and legally sound definition of "navigable waters," there have been many failed attempts over the years. As a result, the scope of the Agencies' control over Americans' property has remained in a near constant state of flux. This is especially true of non-navigable wetlands. In 1986, the Army adopted a definition that stretched "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as "bordering, contiguous, or

---

[1] The Sacketts submit this proposed response brief in accordance with the date and page limits set forth in this Court's June 22, 2021, amended scheduling order. *See* ECF No. 142. Although the Sacketts are not cross-moving for summary judgment, they read the order as permitting Defendant-Intervenors a 45-page combined response, irrespective of whether a cross-motion is filed.

neighboring") to any other regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations); *id*. § 328.3(a)(7) & (c) (1987) (defining adjacent wetlands).

In 2006, a divided Supreme Court rejected this definition as exceeding the scope of the statutory term "navigable waters." *See Rapanos v. United States*, 547 U.S. 715, 739 (2006). In assessing the legality of the 1986 Regulations, a four-Justice plurality determined that the language, structure, and purpose of the Clean Water Act restrict federal authority over non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, with an immediate surface water connection making the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy provided a fifth vote rejecting the 1986 Regulations' definition of "adjacent wetlands" as overbroad, joining the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779–80 (Kennedy, J., concurring). Wetlands may be analyzed under this standard either standing alone or in combination with features "similarly situated" within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

In 2015, after several years of effort to address *Rapanos*, EPA and the Army adopted new regulations redefining "navigable waters," including a new and very broad definition of "adjacent wetlands." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015) (the 2015 Rule). Several lawsuits challenged the 2015 Rule. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgment that the 2015 Rule violated the Clean Water Act and permanently enjoined it. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382–83

(S.D. Ga. 2019). A short time later, partially in response to the decision in *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Rule and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the 2019 Repeal Rule).

## II.    The Navigable Waters Protection Rule and the Exclusion of Non-Abutting Wetlands from Federal Authority

On April 21, 2020, EPA and the Army again redefined "navigable waters" by publishing the Navigable Waters Protection Rule, at issue in this case. 85 Fed. Reg. 22,250 (Apr. 21, 2020). This Rule defines "navigable waters" as comprising four separate categories: "the territorial seas," "tributaries," "lakes and ponds, and impoundments of jurisdictional waters," and "adjacent wetlands," 33 C.F.R. § 328.3(a); lists features that are not "navigable waters," 33 C.F.R. § 328.3(b); and defines terms used in the operative text of the Rule, 33 C.F.R. § 328.3(c).[2]

The Rule defines "adjacent wetlands" as wetlands that abut or are flooded by other regulated waters, or are physically separated from such waters only by natural barriers or by permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)–(iv). The Rule excludes from federal authority most wetland features that do not directly abut other regulable water bodies. Many of these "excluded" wetlands were regulated under prior broader definitions of "adjacent wetlands."

## III.    Commencement of This Lawsuit

On April 29, 2020, Plaintiffs filed this lawsuit against the Agencies' adoption of the Navigable Waters Protection Rule. *See* ECF No. 1. Among other things, Plaintiffs allege that in excluding previously regulated non-abutting wetlands, the agencies engaged in arbitrary decision-

---

[2] Subsequent references to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338–39, and the identical provisions at 40 C.F.R. § 120.2, published the same date at 85 Fed. Reg. at 22,340–41. 40 C.F.R. § 120.2(3)(i) corresponds to 33 C.F.R. § 328.3(c)(1). For ease of reference, and to demonstrate the severability of the portions of the Rule defining "adjacent wetlands," the Sacketts have attached a reproduction of the full text of 33 C.F.R. § 328.3, as Exhibit 1 to this filing.

making and abused their discretion. *See* ECF No. 1 ¶¶ 128, 137–45, 156, 169, 198, 201, 204–05, 220, 223–24. On June 11, 2020, a group of national trade associations led by the American Farm Bureau Federation (the "Business Intervenors") were granted leave to intervene as Intervenor-Defendants. ECF No. 29. The Agencies filed a certified index to the administrative record on July 2, 2020, ECF No. 54, and answered Plaintiffs' complaint on July 6, 2020, *see* ECF No. 56. Plaintiffs moved for summary judgment on July 10, 2020. *See* ECF No. 58. The Agencies and Business Intervenors cross-moved for summary judgment and opposed Plaintiffs' motion for summary judgment on August 24, 2020. ECF Nos. 68–70. In their summary judgment briefing, both the Agencies and Business Intervenors argued that the Rule (including its definition of "adjacent wetlands") is an allowable exercise of agency discretion entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See* ECF Nos. 68-1 at 40–42, 70-1 at 18–26.

## IV. The Agencies' Decision to Rewrite Their Definition of "Navigable Waters" Yet Again

On June 9, 2021, the Agencies announced their intention (for the fourth time in six years) to rewrite the definition of "navigable waters." *See EPA, Army Announce Intent to Revise Definition of WOTUS*, EPA News Releases (June 9, 2021), https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-definition-wotus. On June 21, 2021, the Agencies filed a motion for voluntary remand without vacatur in this Court. *See* ECF No. 140. In support of that motion, the Agencies submitted declarations describing their rationale for deciding to revise or rescind the Rule. *See* ECF Nos. 140-2 (Declaration of Radhika Fox), 140-3 (Declaration of Jaime Pinkham). Those declarations express the Agencies' concern regarding the Rule's exclusion of previously regulated non-abutting wetland features and state an intention to revisit the Rule's

definition of adjacent wetlands. *See* ECF Nos. 140-2 ¶¶ 17–18, 20 (Fox Decl.), 140-3 ¶¶ 17–18, 20 (Pinkham Decl.).

Following filing of the Agencies' motion for remand, this Court amended the briefing schedule to accommodate briefing on that motion. *See* ECF No. 142. Under that amended schedule, briefing on Plaintiffs' motion for summary judgment will be complete on July 12, 2021, with the submission of a combined reply in support of summary judgment and response to Defendants' motion for voluntary remand and any cross-motion for summary judgment. *Id.* Briefing on the Agencies' motion for voluntary remand will conclude on July 26, 2021, with submission of the Agencies' reply in support of voluntary remand. *Id.* All merits briefing will conclude on August 2, 2021, with submission of reply briefing in support of any cross-motion for summary judgment submitted by the Business-Intervenors. *Id.*

## ARGUMENT

The essence of Plaintiffs' claims is that the Agencies' selection of the narrow reading of "navigable waters" adopted by the *Rapanos* plurality over the broader reading endorsed by Justice Kennedy and the dissenters was a discretionary choice that required the Agencies to comply with the reasoned decision-making standards of the Administrative Procedure Act (APA). *See* ECF No. 119-1 at 29. Plaintiffs also argue that the narrower interpretation of "navigable waters" set forth in the Navigable Waters Protection Rule was an impermissible interpretation of the Act. *See* ECF No. 119-1 at 39–40. The fundamental error in this approach is that under Supreme Court precedent for interpreting fractured decisions, the *Rapanos* plurality is controlling, and Justice Kennedy's broader reading (which is textually, constitutionally, and precedentially suspect) is not available to the Agencies or the courts. A plain reading of the text of the Clean Water Act, as authoritatively interpreted by the *Rapanos* plurality, precludes the Agencies from regulating

wetlands that do not directly abut other regulable water bodies. Thus, as to the definition of "adjacent wetlands," no discretionary decision was made, and no relief is available to the Plaintiffs.

This Court should reject the Agencies' motion for voluntary remand for the same reason, to the extent of the "adjacent wetlands" provisions of the Rule. Since the Agencies' definition of "adjacent wetlands" was non-discretionary, that provision of the Rule cannot be revised outward on remand. This Court need not and should not remand the entire Rule. Instead, it should adjudicate the merits of Plaintiffs' claims and the Sacketts' defenses relating to the "adjacent wetlands" provisions of the Rule. Considering the Agencies' stated intention to revisit the adjacent wetlands provisions of the Rule on remand, that controversy remains live and in need of resolution.

## I.    The Clean Water Act Only Regulates Wetlands That Directly Abut Other Regulable Water Bodies

Plaintiffs assert that the terms "navigable waters" and "waters of the United States, including the territorial seas" are to be interpreted as broadly as possible, *see* ECF No. 119-1 at 14–16, 40–41, 43–45, 48–49, and that the Rule's adoption of a narrower interpretation was impermissible, *id.* at 139. That is incorrect, as the text of the Act shows, as the Constitution requires, and as Supreme Court precedent dictates.

### A.    The Act's text limits "navigable waters" to navigable-in-fact waterways

The Sacketts offer this brief textual analysis of the term "navigable waters" in the Act and refer the Court to the more extensive analysis submitted by their counsel during the public comment period on the Rule and contained in the Rule's administrative record. *See* Declaration of Christopher Mills and Exhibit A.

The proper interpretation of "navigable waters" begins with prior uses of the phrase in relevant statutes. *See Rapanos*, 547 U.S. at 723. For over a century, Congress regulated the obstruction of navigation on rivers and lakes through statutes that applied to "navigable waters of

the United States." *See id*. In the case of *The Daniel Ball*, the Supreme Court interpreted this term to refer to "[t]hose rivers . . . which are navigable in fact . . . [and] form . . . a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." 77 U.S. 557, 563 (1870); *see also Rapanos*, 547 U.S. at 723. That is, "navigable waters of the United States" was limited to navigable-in-fact lakes, rivers, and streams.

In 1972, Congress adopted significant amendments to the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*, since called the Clean Water Act. The Act defines "navigable waters" to mean "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The terms "navigable waters" and "waters of the United States, including the territorial seas," are very close to the predecessor statutes' words "navigable waters of the United States." This evinces a congressional intent that the terms be interpreted in a closely related way. The only material variation is the Act's introduction of the term "the territorial seas." This indicates that the Act applies to navigable-in-fact waters as defined in *The Daniel Ball*, plus downstream waters to and including the territorial seas.

Nothing in the Act's definition or use of "navigable waters" extends to *non*-navigable waters upstream of, or isolated from, navigable-in-fact waters. Likewise, nothing in the legislative history of the Act shows that Congress "intended to exert anything more than its commerce power over navigation." *Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159, 168 n.3 (2001) (*SWANCC*).[3] In contrast, when Congress has intended to extend its reach to waters that are not navigable, it has said so expressly. For instance, the Flood Control Act of 1936 claimed

---

[3] Plaintiffs fail to acknowledge the significant constitutional limits that *SWANCC* imposes on the reading of the Clean Water Act and that decision's rejection of legislative history as a reason to read the Act broadly. *See* ECF No. 119-1 at 15, 42.

jurisdiction over "navigable waters or their tributaries, including watersheds thereof." Pub. L. No. 74-738, § 1, 49 Stat. 1570 (June 22, 1936).

The Supreme Court has only once pointed to a provision of the Act, 33 U.S.C. § 1344(g)(1) ("Section 404(g)(1)"), as the basis for interpreting "navigable waters" to extend to non-navigable wetlands abutting navigable rivers or lakes. *See United States v. Riverside Bayview Homes*, *Inc.*, 474 U.S. 121, 135–39 (1985). *But see SWANCC*, 531 U.S. at 171 (Section 404(g)(1) not dispositive of meaning of "navigable waters"); *id.* at 169 n.5 (Section 404(g)(1) falls short of congressional acquiescence in agency practice). The Supreme Court has never ruled on the precise meaning of the "other waters" provision of Section 404(g)(1), other than to hold in *Riverside Bayview*[4] that it reasonably includes wetlands immediately abutting and intermingling with navigable-in-fact creeks, 474 U.S. at 134, in *SWANCC* that it does not include isolated ponds, 531 U.S. at 171–72, and in *Rapanos* that the Act does not encompass all non-navigable tributaries or adjacent wetlands broadly defined, 547 U.S. at 734; *id.* at 787 (Kennedy, J., concurring in judgment).

The analysis attached to the Mills Declaration further shows that reading Section 404(g)(1) in conjunction with Section 10 of the Rivers and Harbors Act precludes a broad reading of the Act as allowing regulation of non-abutting wetlands. The analysis reinforces this conclusion by noting the uses of different terms for various sets of waters that the Act treats in different ways, the Act's protection of water rights established under state law, and the Supreme Court's reading of the Act in *Riverside Bayview*, *SWANCC*, and *Rapanos*.

---

[4] Plaintiffs are incorrect that *Riverside Bayview* held that the Act must be read broadly. *See* ECF No. 119-1 at 15, 41–42. The decision discussed the issue, but its holding is limited to affirming the Army's decision to regulate shoreline wetlands that directly abutted navigable-in-fact creeks where it was difficult to say where the creek ended and the wetland began. *Riverside Bayview*, 474 U.S. at 134.

All of this is to say that a rigorous textual analysis of the statute shows that the proper reading of "navigable waters" is a narrow one that includes navigable-in-fact waterways and their downstream waterways, but does not include non-abutting wetlands. This textual reading is close to that of the *Rapanos* plurality, which limited regulation of non-navigable tributaries to relatively permanent and continuously flowing water bodies which a person of ordinary experience would call a "stream." The plurality also limits regulation of "adjacent wetlands" to those affirmed in *Riverside Bayview* and emphasizes that the necessary connection to meet this standard was intermingling, to the point where it is difficult to say where the creek ends and the wetland begins. *Rapanos*, 547 U.S. at 742; *id*. at 741 n.10.

## B. The Constitution requires a narrow reading of "navigable waters"

The interpretation of "navigable waters" is also subject to constitutional constraints. Under the canon of constitutional avoidance, this Court should interpret the Act to avoid giving it a constitutionally suspect meaning. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) ("When 'a serious doubt' is raised about the constitutionality of an act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))). Any interpretation that would extensively regulate a wide range of non-abutting wetlands raises issues under the Commerce Clause, the Tenth Amendment, and the Non-Delegation Doctrine.[5]

---

[5] The canon of constitutional avoidance "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)). As demonstrated elsewhere in this brief, the term "navigable waters," as it is used in the Act, is not ambiguous. *See supra* pp. 7–10; *infra* pp. 11–24. But even assuming it were, the canon of constitutional avoidance instructs that this Court should not adopt the Plaintiffs' broad reading of "navigable waters."

### 1. The Commerce Clause and Tenth Amendment limit agency regulation of non-abutting wetlands

The Supreme Court held in *SWANCC* that the Act lacks a "clear statement" of congressional intent to exercise the Commerce Power to its outer limits. 531 U.S. at 172–74. Further, the legislative history of the Act only supports the Act's exercise of the Commerce Power over its traditional object: the transport of goods in interstate commerce through navigation. *Id.* at 168 & n.3. Any reading of "navigable waters" that authorizes regulation substantially beyond waters used to transport goods in interstate commerce would violate the Clear Statement Rule. *See SWANCC*, 531 U.S. at 172 ("Where an administrative interpretation of a statute invokes the outer limits of Congress' power, we expect a clear indication that Congress intended that result.").

Similarly, a broad reading of "navigable waters" would violate the Tenth Amendment's reservation of powers to the states, including traditional authority over land use and water resource allocation, which are expressly recognized and protected in the Act. 33 U.S.C. § 1251(b); *see also* Gary E. Parish & J. Michael Morgan, *History, Practice and Emerging Problems of Wetlands Regulation: Reconsidering Section 404 of the Clean Water Act*, 17 Land & Water L. Rev. 43, 84 (1982) ("The existing [regulation] looks and has an effect similar to a program of federal land use control. There should be little doubt that Congress did *not* intend such a result.").

These constitutional concerns are exemplified by EPA's regulation of the Sacketts' property, which EPA claims to be within the reach of the Agencies' prior (i.e., before the Rule) regulatory definition of "adjacent wetlands." ECF Nos. 130-2 ¶¶ 6–9, 130-3, 130-4 (Sackett Decl. and Exs. A & B thereto). But the Sacketts' vacant lot has no connection to any use of water for the transport of goods in interstate commerce. ECF No. 130-2 ¶¶ 3–4. EPA's regulation of building on the lot also directly conflicts with local land use administration. The Sacketts obtained all required local authorization to build; EPA's action directly countermands that decision, by

deciding that no home would be allowed there. *Id.* ¶¶ 3–6. A federal veto of local land use permitting is exactly what *SWANCC* says the Act may not be interpreted to allow. *See SWANCC*, 531 U.S. at 172. In contrast, the Rule more fully respects the Commerce Power and Tenth Amendment limits on federal control over land use by abandoning the Agencies' previously illegal assertion of regulatory authority over non-abutting wetlands. ECF No. 130-2 ¶¶ 14–16. As such, the Court should decline to adopt the broad reading of the term urged by Plaintiffs and reject Plaintiffs' claims.

### 2. The non-delegation doctrine also limits agency regulation of non-abutting wetlands

A broad interpretation of "navigable waters" also raises non-delegation concerns that this Court should avoid by interpreting the Act narrowly. Under the non-delegation doctrine, Congress may not delegate legislative rulemaking authority to executive agencies without providing an "intelligible principle" to guide the agency. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 414–16 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529–32 (1935). If Plaintiffs have correctly interpreted the Act as allowing the Agencies to regulate an ill-defined portfolio of non-abutting wetlands, then this is not a legal question any longer: it is a policy debate about where to draw the line of federal regulation. This debate has roiled the Agencies, the courts, the academy, the regulated public, and NGOs since the mid-1970s. Such difficult and unsettled questions of public policy are quintessentially within the province of the legislative branch to resolve.

The difficulty in determining where to set the outer limit of regulation along the continuum from "navigable-in-fact only" to "all waters, no matter how remote or insignificant," is that the Act is utterly silent on that rather important question. Not one word in the Act offers any direction or principle to determine how small or remote or slightly connected a non-navigable non-abutting

wetland may be and still be regulated. Likewise, the Act provides no guidance on the policy question of how many or what type of non-abutting wetlands should be regulated under the Act. It does not identify any facts that the agencies should investigate or use in order to address that policy question, nor does it provide any direction on how those facts should be determined or weighted. *See Gundy v. United States*, 139 S. Ct. 2116, 2135–42 (2019) (Gorsuch, J., dissenting); *id.* at 2130–31 (Alito, J., concurring); *Paul v. United States*, 140 S. Ct. 342 (2019) (statement of Kavanaugh, J., respecting denial of certiorari).

As a result, to the extent that "navigable waters" is interpreted to include an extensive catalog of different categories of non-navigable waters (including some but not all non-abutting wetlands and ephemeral drainages), the Act provides no "intelligible principle" for determining which non-navigable waters are included. Because this would violate the non-delegation doctrine, the Court should decline to adopt the broad reading of the term urged by Plaintiffs.

## II.     Under the Controlling Plurality Opinion in *Rapanos*, the Rule's Definition of "Adjacent Wetlands" Is Required

*Rapanos* is the best Supreme Court authority on whether wetlands that do not abut navigable-in-fact rivers and lakes are federally protected "navigable waters" under the Clean Water Act. Since *Rapanos* has no majority opinion, this Court must determine which opinion controls. The correct answer is the plurality opinion, which prohibits the Agencies from regulating non-abutting wetlands. Since the plurality opinion compels the exclusion of non-abutting wetlands from federal authority, Plaintiffs' claims necessarily fail as to the Rule's definition of "adjacent wetlands."

## A.    In *Rapanos*, a divided Supreme Court limited the Clean Water Act's application to wetlands

The issue in *Rapanos* was how to interpret whether "navigable waters" include wetlands that do not physically abut navigable-in-fact waterways. 547 U.S. at 728; *see also id*. at 759 (Kennedy, J., concurring). The Supreme Court's judgment vacated and remanded the case because the lower courts and the Agencies had not properly interpreted that term. *Id*. at 757. The five Justices supporting the judgment adopted different but concentric interpretations.

The four-Justice plurality determined that the language, structure, and purpose of the Act limit federal authority over non-navigable tributaries to "relatively permanent, standing or continuously flowing bodies of water" commonly recognized as "streams[,] . . . oceans, rivers, [and] lakes" connected to traditional navigable waters. *Id*. at 739. The plurality then limited regulation of wetlands under the Act to only those wetlands that physically abut such waters, where wetland and water are "indistinguishable." *Id*. at 755.

The plurality sharply critiqued "the breadth of the [Army] Corps' determinations in the field" and especially its continued reliance on an expansive interpretation of "adjacent" waters. *Id*. at 727. It emphasized that in defining "navigable waters" as "*waters* of the United States," the Clean Water Act did not include all "*water* of the United States" but instead could only refer to "continuously present, fixed bodies of water." *Id*. at 732–33. The plurality further explained that the definition of "waters of the United States" must be rooted in the traditional understanding of "navigable waters." *Id*. at 734. As for wetlands, the plurality reiterated that the Act regulates "only those wetlands with a continuous surface connection to bodies that are 'waters of the United States' in their own right, so that there is no clear demarcation between 'waters and wetlands.'" *Id*. at 742.

Justice Kennedy concurred in the judgment but interpreted the Act more broadly than the plurality. But he shared the plurality's concern that an overly broad interpretation of the Act would

read "navigable" out of the text, and insisted that the Act could not cover "wetlands [that] lie alongside a ditch or drain, however remote and insubstantial, that eventually may flow into traditional navigable waters." *Id*. at 778 (Kennedy, J., concurring). He proposed that non-navigable waters must have a "significant nexus with navigable waters." *Id*. at 779. Under this "significant nexus" test, wetlands are regulable if "either alone or in combination with similarly situated lands in the region, [they] significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.'" *Id*. at 780. He emphasized that this connection must not be "speculative or insubstantial." *Id*.

**B.     The Supreme Court has adopted the *Rapanos* plurality as the controlling opinion, as shown most recently in *County of Maui***

In April 2020, the Supreme Court showed that it reads the *Rapanos* plurality as the controlling opinion. In *County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020), the Court addressed the question of whether, under the Clean Water Act, the movement of a pollutant from an injection well (a point source) through groundwater (not a point source) to the ocean (a navigable water) is a regulated "discharge." *Id.* at 1468. The Supreme Court's application of *Rapanos* is determinative here.

In *County of Maui*, the Supreme Court issued four separate opinions: a six-Justice majority opinion authored by Justice Breyer, *id*. at 1468–78, a concurrence by Justice Kavanaugh, *id*. at 1478–79 (Kavanaugh, J., concurring), and two separate dissents, one by Justice Thomas (joined by Justice Gorsuch), *id*. at 1479–82 (Thomas, J., dissenting), and one by Justice Alito, *id*. at 1482–92 (Alito, J., dissenting). All four opinions cite the *Rapanos* plurality, and all four opinions apply its discussion of point sources under the Act in evaluating whether pollutants moving through groundwater to the ocean constitute regulated discharges. *See id.* at 1475 (citing *Rapanos*, 547 U.S. at 743) (nothing in the Clean Water Act requires that a pollutant move "directly" or

"immediately" from its origin to navigable waters); *id.* at 1478 (Kavanaugh, J., concurring) (concluding that the majority reading of "discharge" "adheres to the interpretation set forth in Justice Scalia's plurality opinion in *Rapanos*"); *id.* at 1482 (Thomas, J., dissenting) (concluding that the *Rapanos* plurality opinion does not decide the precise issue presented in *County of Maui*); *id.* at 1487 n.5 (Alito, J., dissenting) (concluding that the *Rapanos* plurality opinion supports "daisy chaining" point sources). Every Justice joined at least one of these opinions elaborating on the *Rapanos* plurality, with Justice Kavanaugh joining both the majority and writing separately on the role of the *Rapanos* plurality in the *County of Maui* decision.

While the four opinions disagreed about how the *Rapanos* plurality opinion applied to the issue in *County of Maui* (the definition of "discharge"), they all agreed that the plurality is the *Rapanos* opinion that matters. None of the *County of Maui* opinions cited or relied on either the *Rapanos* concurrence or the dissent. Thus, when deciding the scope of the Act in *County of Maui*, every member of the Supreme Court looked only to the *Rapanos* plurality opinion.

This is consistent with and grows organically from the Supreme Court's prior citations to *Rapanos*. Before *County of Maui*, *Rapanos* was cited in opinions in nine Supreme Court cases. In *all* of those opinions, the author cited the *Rapanos* plurality opinion. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 706 (2006) (Scalia, J., dissenting); *Exxon Shipping v. Baker*, 554 U.S. 471, 508 n.21 (2008); *Kucana v. Holder*, 558 U.S 233, 253 (2010); *PPL Montana, LLC v. Montana*, 565 U.S. 576, 592 (2012); *Sackett v. EPA*, 566 U.S. 120, 123 (2012); *id.* at 133 (Alito, J., concurring); *Abramski v. United States*, 573 U.S. 169, 198 (2014) (Scalia, J., dissenting); *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 268 (2015); *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1811–12, 1815 (2016); *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 625, 633 (2018). By contrast, the Court has only cited Justice Kennedy's *Rapanos*

concurrence once, in an opinion by Justice Kennedy—and even then the citation immediately followed a citation to the plurality opinion. *See PPL Montana*, 565 U.S at 592 (citing *Rapanos*, 547 U.S. at 730–31 and *id.* at 761 (Kennedy, J., concurring in judgment)). The Sacketts' research reveals no Supreme Court citation to the *Rapanos* dissent.

This pattern of adopting and relying on the *Rapanos* plurality opinion can be seen most clearly in the Supreme Court's post-*Rapanos* cases that address questions arising under the Clean Water Act. *See Sackett*, 566 U.S. at 123; *id.* at 133 (Alito, J., concurring); *Hawkes Co.*, 136 S. Ct. at 1811–12, 1815; *National Ass'n of Mfrs.*, 138 S. Ct. at 625, 633. And as noted above, this pattern culminated in *County of Maui*, in which all four opinions debated how the *Rapanos* plurality opinion applies to the definition of "discharge." Notably, *none* of the Supreme Court's post-*Rapanos* Clean Water Act cases cite either Justice Kennedy's concurrence or the dissent.

Based on the Supreme Court's consistent and clear adoption of the *Rapanos* plurality and that opinion's interpretation of the Act's text as clearly excluding non-abutting wetlands, the Rule's exclusion of wetlands that do not abut regulated waters was not merely an exercise of agency discretion, but is required by the unambiguous text of the Clean Water Act. *Rapanos*, 547 U.S. at 741 (excluding non-navigable wetlands from Clean Water Act authority unless they abut regulated tributaries so closely that the end of one and the beginning of the other cannot be clearly discerned).

**C.**     ***County of Maui* supersedes Fourth Circuit decisions discussing *Rapanos***

There is no precedential Fourth Circuit decision on the question of which of the *Rapanos* opinions controls. This Court is free to adopt the *Rapanos* plurality as the holding of the case based on the Sacketts' arguments above.

The Fourth Circuit has applied Justice Kennedy's concurrence in three cases, but has done so based merely on the agreement of the parties. In *Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, 633 F.3d 278, 288 (4th Cir. 2011), the Fourth Circuit applied Justice Kennedy's concurrence, but only because all parties agreed that it was the applicable test. When *Precon* returned to the Fourth Circuit following remand, that Court again applied the Kennedy concurrence in an unpublished opinion, based on the law of the case doctrine. *Precon Dev. Corps v. U.S. Army Corps of Eng'rs*, 603 Fed. App'x 149, 150 & n.3 (4th Cir. 2015). Similarly, in *Deerfield Plantation Phase II-B Prop. Owners Ass'n v. U.S. Army Corps of Eng'rs*, 501 Fed. App'x 268 (4th Cir. 2012), the parties agreed that if either test was satisfied, the features in question would be regulable. *Id*. at 273. None of these cases decide which *Rapanos* opinion is controlling, and two of the three are unpublished in any event.

The only Fourth Circuit decision to state that Justice Kennedy's concurrence is controlling was subsequently vacated by the Supreme Court, following its above-discussed decision in *County of Maui*. *See Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 649 n.10 (4th Cir. 2018), *vacated and remanded*, 140 S. Ct. 2736 (2020). Moreover, *Upstate Forever* relied exclusively and without other analysis on a Ninth Circuit decision, *United States v. Robertson*, 875 F.3d 1281 (9th Cir. 2017), as authority that Justice Kennedy's concurrence controls. But the Supreme Court also vacated *Robertson*. 139 S. Ct. 1543 (2019). With both *Upstate Forever* and *Robertson* vacated by the Supreme Court, there are no Fourth Circuit precedential decisions on the question of which *Rapanos* opinion controls. And the Supreme Court's extensive reliance on the *Rapanos* plurality in *County of Maui* (which was the basis for vacating *Upstate Forever*) should be read as a rebuke of reliance on Justice Kennedy's *Rapanos* concurrence.

**D.      Under *Marks v. United States*, the plurality opinion is the holding of *Rapanos***

Even absent the Supreme Court's clear and progressively more robust adoption of the *Rapanos* plurality opinion, this Court can identify the plurality opinion as the holding of *Rapanos* by applying the test laid out in *Marks v. United States*, 430 U.S. 188 (1977).

**1.      The controlling opinion is the one that is a "logical subset" of the other**

In *Marks*, the Supreme Court stated that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). Applying that standard to *Rapanos* requires that the plurality opinion be taken as the holding.

As discussed above, the Fourth Circuit has not decided in a precedential opinion which of the *Rapanos* opinions, if any, is the holding of the case. However, the Fourth Circuit has addressed how it applies *Marks*; specifically, it has adopted the approach taken by the D.C. Circuit in *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc). *See A.T. Massey Coal Co., Inc. v. Massanari*, 305 F.3d 226, 236 (4th Cir. 2002) (quoting *Ass'n of Bituminous Contractors, Inc. v. Apfel*, 156 F.3d 1246, 1254 (D.C. Cir. 1998) (quoting *King v. Palmer*, 950 F.2d at 781)). Under the Fourth-Circuit-adopted *King* approach to *Marks*, there is no holding unless "the narrowest opinion represents a 'common denominator of the Court's reasoning' and 'embod[ies] a position implicitly approved by at least five Justices who support the judgment.'" *Massey Coal*, 305 F.3d at 236 (quoting *Apfel*, 156 F.3d at 1254 (quoting *King v. Palmer*, 950 F.2d at 781)). Under the *King* approach, and contrary to Plaintiffs' arguments, *see* ECF No. 119-1 at 15–16, 40–41, a court

is not "free to combine a dissent with a concurrence to form a *Marks* majority." *King*, 950 F.2d at 783.[6]

The relevant question is instead which opinion supporting the judgment—the *Rapanos* plurality or the concurrence—"is the logical subset of [the] other." *Massey Coal*, 305 F.3d at 236. The answer to that question dictates the outcome of this matter. And in answering that question, this Court should start with what the judgment actually did in *Rapanos*. After determining that the lower courts had not applied a proper definition of "navigable waters," the Court remanded *Rapanos* to the Sixth Circuit for further proceedings. 547 U.S at 757. The Supreme Court did not decide the merits of the case; the only question it really addressed was "what does 'navigable waters' or 'waters of the United States' mean in the Clean Water Act?"[7] The holding of *Rapanos*, therefore, is the opinion that is the logical subset of the other as to the meaning of "navigable waters."

This approach accords with *Marks*, in which the Supreme Court applied its prior fractured decision in *Memoirs v. Massachusetts*, 383 U.S. 413 (1966). *See Marks*, 430 U.S. at 193–94 (discussing *Memoirs*). *Memoirs* was a split decision, with three Justices stating that the First Amendment protected pornographic material unless it met three tests. 383 U.S. at 418. Two other Justices would read the First Amendment more broadly to protect all obscene material without limit. *Id.* at 421, 424 (Black and Douglas, JJ., concurring). The Supreme Court said in *Marks* that

---

[6] Plaintiffs' argument that the Rule is an impermissible interpretation of the statute because it excludes non-abutting wetlands in accordance with the plurality opinion, where Justice Kennedy's concurrence and Justice Stevens' dissent would include some non-abutting wetland features, is foreclosed in this Circuit. *See* ECF No. 119-1 at 15–16, 40–41.

[7] Both the plurality and Justice Kennedy's concurrence show this. *See* 547 U.S. at 729 ("In these consolidated cases, we consider whether four Michigan wetlands . . . constitute 'waters of the United States' within the meaning of the Act."); *id.* at 759 (Kennedy, J., concurring) ("These consolidated cases require the Court to decide whether the term 'navigable waters' in the Clean Water Act extends to wetlands that do not contain and are not adjacent to waters that are navigable in fact.").

the narrower reading of the applicable constitutional provision—i.e., the opinion that was a logical subset of the other—was the controlling opinion. *Marks*, 430 U.S. at 193. Similarly, a "logical subset" approach to applying *Marks* to *Rapanos* must look at how broadly or narrowly the two opinions supporting the judgment interpret the applicable statutory provision.

### 2. The *Rapanos* plurality opinion is a "logical subset" of the concurrence as to the definition of "navigable waters"

In *Rapanos*, a majority of the Supreme Court decided that the term "navigable waters" in the Clean Water Act was narrower than agency regulations defining the term. 547 U.S. at 724, 734 ("The plain language of the statute simply does not authorize this 'Land Is Waters' approach to federal jurisdiction."); *id*. at 759 (Kennedy, J., concurring) (concluding that the lower court did not apply the proper standard to determine whether the Clean Water Act applies to wetlands not abutting navigable waters). The Justices supporting the judgment adopted concentric rationales. Four Justices joined in an opinion that interprets "navigable waters" narrowly, while Justice Kennedy interpreted the term "navigable waters" more broadly, but in a way that included all the waters that the plurality would allow regulation of.

The key point of departure between them was the plurality's narrow reading of the term "significant nexus" (as describing only the type of physical intermingling that prevented a clear distinction between the waters and the wetlands) and Justice Kennedy's broad reading of it (as categorically encompassing not only wetlands that are physically intermingled, in accord with the plurality, but also encompassing other wetlands on a case-by-case basis—an approach with which the plurality disagreed). *Compare Rapanos*, 547 U.S. at 754–55 (disagreeing with Justice Kennedy's broad reading of "significant nexus"), *with id*. at 774 (Kennedy, J., concurring) (opining that Supreme Court precedent does not limit jurisdictional wetlands to physically abutting

jurisdictional tributaries). As shown in more detail below, when it comes to the regulation of wetlands, the plurality opinion's position is a "logical subset" of Justice Kennedy's.

The plurality concluded that the application of the term "navigable waters" to a wetland requires a two-part inquiry:

> [E]stablishing that wetlands . . . are covered by the Act requires two findings: first, that the adjacent channel contains a "wate[r] of the United States," (*i.e.*, a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the "water" ends and the "wetland" begins.

*Rapanos*, 547 U.S. at 742. And for the plurality, the term "body of water" is limited to lakes, streams, and rivers. *Id*. at 732–33.

Justice Kennedy's concurrence agreed with several important aspects of the plurality opinion. For example, he agreed that the term being interpreted was "navigable waters," 547 U.S. at 760 (Kennedy, J., concurring), and that the issue was whether wetlands that do not directly abut such waters are nonetheless regulable, *id*. at 759 (Kennedy, J., concurring). And both the plurality and Justice Kennedy agreed that wetlands that abut traditionally navigable waters are the outer scope of the term "adjacent." *Id*. at 740–41 & n.10; *id*. at 759 (Kennedy, J., concurring) (addressing "whether the term 'navigable waters' in the Clean Water Act extends to wetlands that do not contain and are not adjacent to waters that are navigable in fact"). Justice Kennedy also expressed important points of commonality with the plurality's reasoning. "The plurality's opinion begins from a correct premise," which is that the Act regulates "at least some waters that are not navigable in the traditional sense." *Id.* at 767 (Kennedy, J., concurring).

But Justice Kennedy criticized the plurality, *id.* at 768 (Kennedy, J., concurring), for identifying two limitations to the Act: first, that the water adjacent to the wetland must be "a relatively permanent body of water connected to traditional interstate navigable waters;" and

second, that the wetland must have "a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins." 547 U.S. at 742.

As to relative permanence ("the plurality's first requirement"), Justice Kennedy viewed the plurality's reading of the Court's prior decision in *Riverside Bayview* as too narrow. *Rapanos*, 547 U.S. at 771 (Kennedy, J., concurring). Justice Kennedy concluded that the Army could reasonably construe the term "waters" more broadly to include not only the "permanent streams" accepted by the plurality, but also "impermanent streams." *Id*. at 770 (Kennedy, J., concurring).

Turning to "[t]he plurality's second limitation," Justice Kennedy disagreed that *Riverside Bayview* limits the scope of wetlands included within the term "navigable waters" to just those which abut navigable waters so closely that they cannot be distinguished, or even that there must be a continuous surface connection. *Id.* at 772–73 (Kennedy, J., concurring). Justice Kennedy likewise disagreed with the plurality's reading of *SWANCC* as requiring a surface connection between wetlands and navigable waters. *Id.* at 774 (Kennedy, J., concurring). Ultimately, in contrast to the plurality, Justice Kennedy concluded that the Army's broader definition of non-abutting but still "adjacent" wetlands would be reasonable if limited to those wetlands with a significant nexus. *Id*. at 775 (Kennedy, J., concurring).

In short, Justice Kennedy's concurrence agreed that those waters that the plurality generally considers "navigable" are clearly covered by the Act. But Justice Kennedy's view was that the plurality read the statute, *Riverside Bayview*, and "significant nexus" as used in *SWANCC*, too narrowly. In his view, the Clean Water Act reaches beyond the plurality's limitations. As to wetlands, Justice Kennedy agreed with the plurality that those wetlands which abut covered tributaries so closely that they cannot easily be distinguished are categorically covered by the Act, because they have a "significant nexus" to the covered waters. *Id*. at 780 (Kennedy, J., concurring).

Whereas the plurality would limit covered wetlands to this category, for Justice Kennedy they are a subset of the broader group of "adjacent" waters (as broadly defined by the Agencies) to which he would find the Act applicable on a case-by-case basis. Thus, the relatively permanent tributaries and directly abutting wetlands covered by the plurality's rule are a logical subset of Justice Kennedy's broader reading of "navigable waters." So, following the logical subset approach to applying *Marks*, as required in this Circuit, the *Rapanos* plurality's reading of "navigable waters" is a logical subset of Justice Kennedy's and is therefore the holding of the case.

## III. Plaintiffs' APA-Based Claims Are Unavailing Because Procedural Deficiencies Cannot Provide Grounds to Reverse a Non-Discretionary Agency Decision

Plaintiffs argue that the Agencies did not provide "good reasons" or "adequate justification" for excluding non-abutting wetlands from the Rule, and that they did not sufficiently consider impacts to water quality and reliance interests in doing so. *See* ECF No. 119-1 at 29–37. Therefore, they argue, the rule is arbitrary and capricious and should be set aside under the APA. *Id*. As to the definition of "adjacent wetlands," this argument fails.

As discussed above, a plain reading of the text of the Clean Water Act, as authoritatively interpreted by the Supreme Court, precludes the Agencies from regulating wetlands that do not directly abut other regulable water bodies. *See supra* pp. 7–24. Any alleged procedural deficiencies in the rulemaking process therefore could not have influenced or affected the Agencies' non-discretionary exclusion of non-abutting wetlands from federal authority. Plaintiffs' arguments that the Rule was promulgated in violation of the procedural requirements of the APA must necessarily fail.

Procedural or factual infirmities contained in agency rulemaking record will not affect the lawfulness of non-discretionary agency action. *See* Kevin M. Stack, *The Constitutional Foundations of Chenery*, 2007 Yale L.J. 952, 965–66 ("As Judge Friendly put it, '[W]hen agency

action is statutorily compelled, it does not matter that the agency which reached the decision required by law did so on a debatable or even a wrong ground, for remand in such a case would be but a useless formality.'" (quoting Henry J. Friendly, *Chenery Revisited: Reflections on the Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 199, 210)). This general administrative law principle pertaining to the relationship between the rulemaking record and compelled agency action is illustrated by three applications.

First, in reviewing agency decisions, several courts have held that remand to the agency "is unnecessary . . . '[w]here application of the correct legal standard could lead to only one conclusion.'" *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (affirming an agency decision in a social security appeal despite factual errors in the ALJ's conclusions (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998))); *Kang v. Attorney General*, 611 F.3d 157, 167–68 (3d Cir. 2010) (refusing to remand to the Board of Immigration Appeals where "application of the correct legal principles" would not alter the legal conclusions reached by the court); *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992) (refusing to remand to the agency where only "one disposition is possible as a matter of law"). Likewise, remanding the adjacent wetlands provisions of the Rule to the Agencies for further proceedings that Plaintiffs' claim are required by the APA would lead to an identical result: the exclusion of non-abutting wetlands, as required by the Act.

Second, although "[a]n administrative remand may be appropriate when an agency procedurally errs by failing to articulate a reasoned basis for its decision[,] . . . [w]hen an agency legally errs by acting outside its statutory authority, a remand would be futile and improper." *Union Pacific R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 901 (8th Cir. 2013). In *Union Pacific*, the Eighth Circuit refused to remand a Customs decision because the agency had plainly

exceeded its statutory authority, and a court "simply will not remand '[w]here application of the correct legal standard could lead to only one conclusion.'" *Id*. (quoting *Zabala*, 595 F.3d at 409). Although *Union Pacific* involved reversing rather than upholding an agency decision, it stands for the same fundamental principle: remand to the agency to correct procedural infirmities is inappropriate where the matter is resolved by a legally compelled conclusion.

Third, the *Chenery* doctrine, which provides that an agency may not defend an administrative decision on different grounds than those on which the decision was originally based, is inapplicable where the decision was compelled by law. Numerous cases hold that in performing its judicial function of resolving a pure question of statutory construction, a court should not be constrained by the conclusions (erroneous or not) contained in the administrative record compiled by an agency. *See*, *e.g.*, *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1099–1102 (Fed. Cir. 1996) (affirming a proceeding on grounds other than those in the agency's record and finding *Chenery* inapplicable where the "the sole issue is one of statutory construction," the "plain language of the statute compels the conclusion," and the conclusion does not "implicate the exercise of agency discretion"); *Ark. AFL-CIO v. Fed. Commc'ns Comm'n*, 11 F.3d 1430, 1440 (8th Cir. 1993) (plurality opinion) (determining courts may find additional bases "for a correct legal result" beyond those offered by the agency because "the Supreme Court clearly limited *Chenery* to situations in which the agency failed to make a necessary determination of fact or of policy"); *Railway Labor Execs.' Ass'n v. Interstate Commerce Comm'n*, 784 F.2d 959, 969 (9th Cir. 1986) (holding *Chenery* is inapplicable where "the issue in dispute is the interpretation of a federal statute"); *N.C. Comm'n of Indian Affairs v. U.S. Dep't of Labor*, 725 F.2d 238, 240 (4th Cir. 1984), *cert. denied*, 469 U.S. 828 (1984) (finding no "*Chenery* problem . . . because the question of interpretation of a federal statute is not 'a determination or judgment which an administrative

agency alone is authorized to make.'" (quoting *Securities and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (*Chenery II*))). Likewise, the Rule's exclusion of most non-abutting wetlands from federal authority is compelled by the Act. As such, the "adjacent wetlands" provision of the Rule must be upheld under the text of the Clean Water Act, irrespective of the reasoning set forth by the Agencies.

The general principle established in these cases recognizes that it is inappropriate to set aside or remand a non-discretionary action—such as a legally compelled regulatory interpretation of a statute—based only on alleged infirmities in the rulemaking record. Plaintiffs' arguments under *Department of Homeland Security v. Regents of University of California*, 140 S. Ct. 1891, 1911 (2020), are inapplicable to the Rule's non-discretionary exclusion of non-abutting wetlands from the definition of "navigable waters." *See* ECF No. 119-1 at 13–14, 37–39. *Regents* involved the Secretary of Homeland Security's termination of an immigration program that allowed certain unauthorized aliens to apply for a two-year forbearance of removal and granted eligibility for work authorization and various federal benefits. *Regents of Univ. of Cal.*, 140 S. Ct. at 1901. Unlike the agency decision at issue in *Regents*, the exclusion of non-abutting wetlands from federal authority did not involve any subsequent "policy choices" or the exercise of "discretionary authority." *See id.* at 1910–11. Instead, the Rule simply follows the Clean Water Act's unambiguous command to exclude non-abutting wetlands from federal authority.

Therefore, Plaintiffs' APA claims fail as to the Rule's non-discretionary definition of adjacent wetlands.

## IV.     The Agencies' Motion for Remand Should be Denied

For similar reasons, the Agencies motion for remand, ECF No. 140, should be denied as to the Rule's definition of "adjacent wetlands." Since the Agencies' decision to exclude most non-

abutting wetlands was non-discretionary, they lack discretion to revise that provision "outward" on remand. By seeking pre-merits remand of that provision, the Agencies seek to evade judicial review and maintain the broadest discretion possible to revisit the Rule. The Court should reject this effort. This Court need not and should not remand the entire Rule. The Court has the Sacketts' opposition to Plaintiffs' motion for summary judgment above. *See supra* pp. 6–27. Plaintiffs' motion for summary judgment will be fully briefed when they file their reply on July 12, 2021, *before* completion of briefing on the Agencies' motion for remand on July 26, 2021. *See* ECF No. 142. And considering the Agencies' stated intention to revisit the "adjacent wetlands" provisions on remand, the controversy raised in Plaintiffs' summary judgment briefing regarding the extent of the Agencies' discretion to do so remains live and in need of resolution. This Court should exercise its discretion to deny remand of the Rule's "adjacent wetlands" definition and determine the merits of this question of statutory construction based on the briefing before it.

### A.      This Court possesses wide discretion to adjudicate the merits of the "adjacent wetlands" provisions

Voluntary remand without vacatur is an equitable remedy that is within the sound discretion of the Court to deny or grant. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017) ("A district court has broad discretion to decide whether and when to grant an agency's request for a voluntary remand."); *S.C. Wildlife Fed'n v. Limehouse*, No. C/A 2:06-CV-2528-DCN, 2009 WL 2244210, at *5 (D.S.C. July 27, 2009) ("the court has discretion over whether to grant such a request"). When presented with a motion to remand, it is within the sound discretion of this Court to either adjudicate the merits of an agency action or remand it. *Friends of Park v. Nat'l Park Serv.*, No. 2:13-CV-03453-DCN, 2014 WL 6969680, at *3 (D.S.C. Dec. 9, 2014) ("]C]ourts have the power to review agency action before remand, courts also have the discretion to remand the case back to the agency . . . ."). The moving government party bears the

burden of establishing the propriety of voluntary remand prior to a decision on the merits. *See Limnia*, 857 F.3d at 381. Three factors are worthy of this Court's consideration in exercising its discretion to grant or deny the Agencies' motion.

First, courts can and do refuse to grant voluntary remand in circumstances where to do so would be inappropriate. *See Lutheran Church-Missouri Synod v. Fed. Comm. Comm'n*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying motion for voluntary remand where remand would enable an agency to strategically avoid judicial review). *See also Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v. Norton*, 527 F. Supp. 2d 130, 136 (D.D.C. 2007) (refusing to grant voluntary remand in part because, due to historic failures, the district court was not persuaded the moving agency would on remand resolve issues identified by the litigation or conform its conduct to statutory mandate); *Limnia*, 857 F.3d at 387 (finding voluntary remand inappropriate where the agency did not intend to "take further action with respect to the *original agency decision on review*" and remand would instead have "function[ed] . . . as a dismissal of a party's claims"); *Miss. River Transmission Corp. v. FERC*, 969 F.2d 1215, 1217 n.2 (D.C. Cir. 1992) (denying remand where a motion for remand was filed late in the judicial review process and without observance of proper procedure).

Second, a reviewing court may exercise its discretion to partially remand an agency action and partially adjudicate its merits. *See Am. Paper Inst. v. U.S. E.P.A.*, 660 F.2d 954, 965–66 (4th Cir. 1981) (granting partial remand of a rule to allow the agency to correct data errors but adjudicating the remainder of petitioners' claims on the merits); *NTN Bearing Corp. of Am. v. United States*, 46 F. Supp. 3d 1375, 1382 (Ct. Int'l Trade 2015) (granting partial voluntary remand of an agency decision and adjudicating the merits of the remainder of plaintiff's claims); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL

3607790, at *5–6 (N.D. Cal. Aug. 16, 2011) (granting voluntary partial remand of one issue and setting a plan for adjudication of the non-remanded issues).

Third, where an agency believes its original decision was incorrect and its remand request is predicated on "a change in agency policy or interpretation," the way in which a court will exercise its discretion differs if the challenged agency action was statutorily compelled (or forbidden under *Chevron* Step One). *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1029–30 (Fed. Cir. 2001). Although a reviewing court may still grant remand, it may also decide the statutory issue where the circumstances warrant. *See id.* This rule conforms to the Fourth Circuit's approach to *Chevron*, *see Brown & Williamson Tobacco Corp. v. U.S. Food & Drug Admin.*, 153 F.3d 155, 161 (4th Cir. 1998) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." (quoting *Chevron,* 467 U.S. at 842–43)), as well as to broader principles of administrative law, *cf. Social Sec. Bd. v. Nierotko*, 327 U.S. 358, 369 (1946) ("it is a 'judicial function'" and not an agency function, to decide the final "limits of its statutory power").

## B. The Court *need not* remand the entire rule in response to the Agencies' motion

The Court need not remand the Navigable Waters Protection Rule in its entirety in response to the Agencies' motion. As noted, this Court has wide latitude to deny or grant a motion for remand. *See Limnia*, 857 F.3d at 381. And this discretion includes the latitude to partially remand an agency rule and adjudicate the remaining merits. *See Am. Paper Inst.*, 660 F.2d at 965–66; *NTN Bearing Corp.*, 46 F. Supp. 3d at 1382; *Gonzales & Gonzales*, 2011 WL 3607790, at *5–*6. Under

the circumstances of the present case, partial remand[8] and partial adjudication is especially appropriate.

The Court should not remand the entire rule. Upon filing of Plaintiffs' reply to the Sacketts' and Business Intervenors' oppositions to summary judgment on July 12, 2021, the Plaintiffs' motion for summary judgment will be fully briefed. *See* ECF No. 142. This is several weeks *prior* to the completion of briefing on the Agencies' motion for remand. *See id.* As noted above, one discrete aspect of the Rule is its definition of "adjacent wetlands" as wetlands that abut or are flooded by other regulated waters or are physically separated from such waters only by natural barriers or permeable artificial barriers. 33 C.F.R. § 328.3(c)(1). This definition—the fourth of four categories of waters identified as regulable in the text of the Rule—is severable from the remainder of the Rule. *See id.*

Plaintiffs alleged in their complaint and argued on summary judgment that this definition of "adjacent wetlands" was an abuse of discretion. *See* ECF No. 1 ¶¶ 128, 137–45, 156, 169, 198, 201, 204–05, 220, 223–24; ECF No. 119-1 at 31–32, 35–37. In opposing the Plaintiffs' motion for summary judgment in this combined response, the Sacketts argue that Plaintiffs' claims as to the Rule's definition of "adjacent wetlands" must fail because the exclusion of non-abutting wetlands from federal regulation is not a matter of agency discretion but is instead compelled by the plain text of the Clean Water Act.[9] *See supra* pp. 7–24. Upon filing of Plaintiffs' reply in support of summary judgment on July 12, 2021, this legal question will be fully briefed as between the Plaintiffs and the Sacketts. *See* ECF No. 142. And because the portion of the Rule excluding certain

[8] The Sacketts take no position on remand of other portions of the Rule; their only interest is in the "adjacent wetlands" provisions of it.

[9] The Agencies have defended the Rule as an exercise of their discretion and reject the Sacketts' argument that the adjacent wetlands definition in the Rule is legally compelled. *See* ECF No. 68-1 at 40–42.

non-abutting wetlands does not bear upon any other provision of the Rule, this Court may exercise its discretion to adjudicate this aspect of Plaintiffs' case while remanding the remainder of the Rule if the Court concludes that is appropriate.

**C.     The Court *should* deny the Agencies' motion for remand as to the "adjacent wetlands" provisions of the Rule**

Not only do the circumstances of this case *allow* the Court to deny remand of the Rule's definition of "adjacent wetlands," they counsel strongly *in favor* of doing so. Throughout this litigation, the Agencies have argued that the Rule's definition of "adjacent wetlands" is merely an exercise of agency discretion. *See* ECF No. 68-1 at 40–42. The Agencies now seek to exercise this claimed discretion by abandoning their defense of the Rule and changing it back to a broader definition of "adjacent wetlands." *See* ECF Nos. 140-2 ¶¶ 17–18, 20 (Fox Decl.), 140-3 ¶¶ 17–18, 20 (Pinkham Decl.). By moving for voluntary remand, the Agencies implicitly ask this Court to prejudge the merits of the Sacketts' claims and affirm their discretion to revisit the Rule. The Court should reject this effort, for four reasons.

*First*, the extent of the Agencies' discretion to redefine "adjacent wetlands" is a live controversy to which the parties are entitled to a decision. The importance of a decision on this merits question is especially important now that the Agencies have indicated an intention to inflate the definition of "adjacent wetlands"—a move which the Sacketts argue would be illegal. *See supra* pp. 7–24. If the Sacketts are correct, the Agencies are not entitled to reconsider the definition of "adjacent wetlands" on remand because they do not have the discretion to do so. *Id.* As such, litigation over the extent to which the Clean Water Act compelled the Agencies to exclude non-abutting wetlands from the Rule is far from "unnecessary." *See* ECF No. 140 at 2, 140-1 at 2. Instead, adjudicating the merits of this question cuts to the heart of what the Agencies are seeking.

Moreover, a decision on the merits of the Sacketts' defense of the Rule would properly guide the Agencies in their stated intent to revise the definition of "adjacent wetlands." If the Court agrees with the Sacketts that the *Rapanos* plurality controls and the exclusion of non-abutting wetlands was compelled, then the Agencies lack any discretion to expand the definition of "adjacent wetlands" on remand. On the other hand, if the Court agrees with the Plaintiffs that the broader "significant nexus" test is the controlling standard, *see* ECF No. 119-1 at 41–43, this will likewise provide necessary guidance for the Agencies' exercise of discretion on remand. *See Rapanos* 547 U.S. at 759, 779–80 (Kennedy, J., concurring). Such guidance is especially important given the Agencies' historic failure to craft a durable and legally sufficient definition of "adjacent wetlands." *See supra* pp. 2–5. Indeed, at least one court has rejected a motion for voluntary remand where—among other reasons—the agency's historic failures left the court unconvinced that the agency would resolve issues identified by the litigation or conform its conduct to a statutory mandate on remand. *See Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv.*, 527 F. Supp. 2d at 136.

*Second*, in the closely related situation where an agency believes its original decision was incorrect and its remand request is predicated on "a change in agency policy or interpretation," the exercise of the court's discretion will differ if the challenged agency action was statutorily compelled or forbidden under *Chevron* Step One. *See SKF*, 254 F.3d at 1029–30. In such scenarios, although a reviewing court still retains the discretion to grant remand, it may instead decide the statutory issue if the circumstances warrant. *See id.* The Sacketts have argued that the Agencies' exclusion of non-abutting wetlands is legally compelled by a plain reading of the text of the Clean Water Act. *See supra* pp. 7–24. Therefore, any analysis ends at *Chevron* Step One. *Id.* This Court should therefore exercise its discretion to "decide the statutory issue" instead of remanding that

portion of the Rule. *See SKF*, 254 F.3d at 1029–30; *Brown & Williamson Tobacco Corp.*, 153 F.3d at 161. *Cf. Nierotko*, 327 U.S. at 369 ("it is a 'judicial function,'" and not an agency function, to decide the final "limits of its statutory power").

*Third*, the Agencies' argument that remanding without deciding the merits would conserve judicial resources and benefit the parties is unavailing and should be rejected, at least as to the "adjacent wetlands" provisions of the Rule. *See* ECF No. 140 at 11–13. The Agencies argue in support of this contention that remand would permit the creation of a new administrative record and prevent needless litigation upon the current administrative record. *Id.* at 10, 13. But the Sacketts claim the definition of "adjacent wetlands" is compelled by the Act. If they are correct, then the contents of the Rule's current administrative record, or any new administrative record that might be created on remand, is irrelevant to the question the parties have asked this Court to address. As noted above, if the Sacketts are correct that the Agencies' decision to exclude non-abutting wetlands from the definition of "navigable waters" is compelled by the Act, then remanding for the Agencies to compile a new administrative record would be a futile endeavor. *Cf. Union Pacific R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 901 (8th Cir. 2013) (refusing to remand an agency decision, because the agency had plainly exceeded its statutory authority, and a court "simply will not remand '[w]here application of the correct legal standard could lead to only one conclusion.'" (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010))); *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992) (refusing to remand to the agency where only "one disposition is possible as a matter of law"). Here, there is nothing left for the Agencies to "crystallize." *See* ECF No. 140-1 at 10–11 (citing *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999)). The Sacketts raise a purely legal question

of statutory construction, and the Court should address that question now, before the Agencies waste any more time.

Illustrating the principle that a rulemaking record does not control questions of statutory construction, numerous courts have held that the *Chenery* doctrine—which provides that an agency may not defend an administrative decision on different grounds than those contained in the administrative record—is inapplicable where that decision was compelled by law. These cases hold that in performing its judicial function of resolving a pure question of statutory construction, a court should not be constrained by the conclusions contained in the administrative record compiled by an agency. *See supra* pp. 26–27.[10]

*Fourth*, affirming the Agencies' discretion and remanding the adjacent wetlands provisions of the Rule without deciding the merits would effectively deny the Sacketts their defense of the Rule. The Sacketts seek intervention to establish that the exclusion of non-abutting wetlands—including those alleged to exist on their property—was compelled by law. *See* ECF No. 130 at 11–13. But remanding the Rule for the Agencies to revisit the definition of "navigable waters" (for

---

[10] Even if a new administrative record *would* help the Court's adjudication of the legality of the "adjacent wetlands" provisions (which it would not), the authority cited by the Agencies for the proposition that remand would promote "jurisprudential interests" is wholly inapplicable. *See* ECF No. 140-1 at 10–11. The cases cited by the Agencies each involve discussion of ripeness (and not the appropriateness of voluntary remand) where the agency had either already published a proposed rule to replace the challenged action, or where plaintiffs challenged an *incomplete* agency action. *See Am. Petroleum Inst. v. EPA*, 683 F.3d at 387–88 (finding plaintiffs' claims unripe where a proposed rule that had already been published would "wholly eliminate" the grounds for one of plaintiffs' claims); *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999) (finding plaintiffs' challenge to an agency's NEPA compliance in issuing oil and gas leases unripe where agency had not yet issued the leases in question at the time of suit); *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 30 (D.C. Cir. 1984) (discussing ripeness and finality concerns in the context of a challenge to certain actions taken during ongoing administrative process). But in this case, Plaintiffs seek adjudication of the merits of the Agencies' discretion to define "navigable waters" to exclude non-abutting wetlands in the currently effective Navigable Waters Protection Rule. This Court clearly has jurisdiction to reach the merits of those claims, and remand for preparation of a new administrative record would not promote any jurisprudential interest.

the fourth time in six years) and broaden the definition of "adjacent wetlands" permits the Agencies to evade judicial review of the scope of their discretion merely by exercising the discretion they claim to have in the first place. But the *scope* of that discretion is what this case is fundamentally about. *Cf. Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012) (stressing that an agency cannot "stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way" because this would allow "a savvy agency" to "perpetually dodge review"). And this is not merely an "abstract disagreement over administrative polic[y]." *See* ECF No. 140-1 at 10. It has a real effect on the concrete interests the Sacketts have sought to vindicate in this litigation—their right to use their private property without the United States Army's permission. *See* ECF No. 130 at 11–13 (alleging significant concrete interests in the adjudication of the legality of the "adjacent wetlands" provisions); ECF No. 130-2 ¶¶ 16–20 (Sackett Decl.) (alleging significant personal harm should the Agencies return to the illegally overbroad "adjacent wetlands" definition in effect prior to the adoption of the Rule); *infra* pp. 37–38 (arguing that the Sacketts have independently established standing to defend the adjacent wetlands provisions of the Rule). Courts have denied motions for voluntary remand where granting the motion would prejudicially allow an agency to evade judicial review. *See Lutheran Church-Missouri Synod*, 141 F.3d at 349.[11]

---

[11] Where agency action is compelled, remand to the agency is far from inevitable, so voluntary remand will significantly impair the judicial review rights of the parties. *Cf.* Joshua Revesz, *Voluntary Remands: A Critical Reassessment*, 70 Admin. L. Rev. 361, 403 (2018); *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992). If the merits are adjudicated and the Rule is either vacated (as requested by the Plaintiffs) or upheld as compelled (as requested by the Sacketts) it *will not* be remanded to the agency. However, the framework for voluntary remand—established in the context of the formal adjudication widely prevalent in prior eras of administrative law—generally approaches the problem as if remand is inevitable (as it generally is in the context of review of formal adjudication). *See* Revesz, *supra*, at 403. It therefore treats most voluntary agency remand requests as a mere "question of timing." *Id*. But in the context of judicial review of agency *rulemaking*, "the choice between voluntary remand and litigating on the

36

This Court should deny the Agencies' motion as to the "adjacent wetlands" provisions of the Rule, and instead decide Plaintiffs' motion for summary judgment on that issue.

## V.     The Sacketts Have Standing to Defend the Rule

The Sacketts have standing to defend the "adjacent wetlands" provision of the Rule. An intervenor may demonstrate standing via the standard constitutional inquiry—by proving "injury-in-fact," causation, and redressability. *See Doe v. Public Citizen*, 749 F.3d 246, 262 (4th Cir. 2014) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

As noted by the D.C. Circuit (where circuit authority requires standing for defendant-intervenors), a defendant-intervenor demonstrates "a sufficient injury in fact where . . . [the defendant-intervenor] benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015). That is precisely the case with the Sacketts. Since 2007, EPA has claimed regulatory authority over the Sacketts' residentially zoned vacant lot on the grounds that it contains features regulated as "adjacent wetlands" under the 1986 Regulations. *See* ECF Nos. 130-2 ¶¶ 7–13, 130-3, 130-4 (Sackett Decl. and Exs. A & B thereto). As a result, the Sacketts have been unable to build a home on their lot for the last fourteen years. ECF No. 130-2 ¶¶ 11–13 (Sackett Decl.). But under the Rule's revised definition of "adjacent wetlands," the Sacketts' property is excluded from agency authority under the Act. *See* 33 C.F.R. § 328.3(c)(1); ECF Nos. 130-2 ¶¶ 3–4, 14–15, 130-3, 130-4 (Sackett Decl. and Exs. A & B thereto)

merits is not merely a question of timing" but is instead "a question of what remedy" private parties to the action will receive. *Id.* For this reason, in applying the voluntary remand doctrine, this Court "should be . . . attentive to private parties' [such as the Sacketts'] rightful position." *Id. See also*, Toni M. Fine, *Agency Requests for "Voluntary" Remand: A Proposal for the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079, 1092–93, 1119 (1996) (framing the discussion in terms of the "[i]mportance [o]f [j]udicial [r]eview [f]unction" and noting that "the rights of intervenors warrant special attention in th[e] context" of an opposed motion for voluntary remand).

(establishing that the Sacketts' lot has no surface water connection to any other surface water and is separated from the closest surface water by an impermeable artificial barrier). Therefore, for as long as the Rule remains in effect, it affords the Sacketts significant regulatory relief. *See* ECF No. 130-2 ¶ 16 (Sackett Decl.).

But the Plaintiffs' challenge to the Rule, if successful, would remove that relief and renew the Sacketts' injuries. *See* ECF No. 1 at 79 (seeking vacatur of the Rule). Should the Rule be vacated, one outcome would be the immediate revival of the regulations in effect in 2007 and the return of the Sacketts' property to EPA's asserted regulatory dominion. And since an EPA jurisdictional determination under those regulations remains in effect as to the Sacketts' property, this injury is certain and immediate. ECF No. 130-2 ¶ 13 (Sackett Decl.). The revival of the prior rules would therefore have an immediate negative effect on the Sacketts' ability to use and enjoy their private property and would remove the benefit to the Sacketts of the Rule. *See* ECF No. 130-2 ¶ 17–19 (Sackett Decl.).

Likewise, should the Agencies succeed in evading judicial review of the scope of their discretion to define "adjacent wetlands," they will retain broad discretion to redefine that term to again include non-abutting wetlands such as those alleged to exist on the Sacketts' property. This too would gravely harm the Sacketts' long-term ability to use and enjoy their private property. *See* ECF No. 130-2 ¶¶ 17–19 (Sackett Decl.).

These injuries are directly traceable to the Plaintiffs' lawsuit and would be redressed through a judgment in favor of the Sacketts, which would prevent the Agencies from revising the Rule on remand to encompass a broader catalogue of non-abutting wetlands. *See Crossroads Grassroots Policy Strategies*, 788 F.3d at 316 (under similar circumstances, if a defendant-intervenor "can prove injury, then it can establish causation and redressability").

**VI. The Sacketts Reserve the Right to File an Opposing Brief to Any Additional Relief Sought by Plaintiffs**

In addition to this combined opposition to Plaintiffs' motion for summary judgment and the Agencies' motion for voluntary remand, the Sacketts reserve the right to treat any request for additional relief made in the Plaintiffs' response to the Agencies' motion for remand as a separate motion. The Sacketts reserve the right to file a separate brief in response to any such request for additional relief, and reserve the right to speak and present evidence at any hearing on the matter.

## CONCLUSION

The *Rapanos* plurality is controlling as to the Agencies' authority to regulate "adjacent wetlands," and therefore the "adjacent wetlands" provisions of the Navigable Waters Protection Rule are compelled by statute. Plaintiffs' motion for summary judgment must be denied as to the "adjacent wetlands" provisions of the Navigable Waters Protection Rule. Likewise, the Agencies' motion for voluntary remand without vacatur should be denied as to the "adjacent wetlands" provisions of the Rule.

DATED:  June 28, 2021.

<div style="margin-left:40%">

Respectfully submitted,

s/Christopher Mills
CHRISTOPHER MILLS
D.S.C. Bar No. 13432
Spero Law LLC
1050 Johnnie Dodds Blvd., #83
Mount Pleasant, SC 29465
Telephone: (843) 606-0640
Email: cmills@spero.law

ANTHONY L. FRANÇOIS*
CHARLES T. YATES*
Pacific Legal Foundation
930 G Street
Sacramento, CA  95814
Telephone:  (916) 419-7111
Email:  afrancois@pacificlegal.org
Email:  cyates@pacificlegal.org
*Attorneys for Proposed Intervenor-Defendants Chantell and Michael Sackett*

*\* pro hac vice*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 28, 2021, I filed and thereby caused the foregoing document

to be served via the CM/ECF system in the United States District Court for the District of South

Carolina on all parties registered for CM/ECF in the above-captioned matter.

s/Christopher Mills
CHRISTOPHER MILLS